CASE 76—PETITIONS ORDINARY—JUNE 17.

# Newport News & Mississippi Valley Company v. Stuart's Administrator.
## Same v. Stuart (Two Cases).
## Same v. Wyatt.

APPEAL FROM GRAVES COMMON PLEAS COURT.

1. RAILWAY ACCIDENT AT CROSSING—NEGLIGENCE—PEREMPTORY INSTRUCTION.—In an action for damages against a railroad company, charging negligence as the cause of a collision at a cross-

ing, and in which contributory negligence was pleaded as a defense, it appearing that by reason of the conformation of the surrounding country travelers upon the highway approaching the crossing could not see a train coming until within twelve or fifteen feet of the crossing, but that the engineer and fireman on the train could have seen the danger in time to have stopped the train or so checked its speed as to have avoided the collision, and there being evidence that the whistle was not blown in time to have warned persons on the highway approaching the crossing, a motion for a peremptory instruction was properly overruled.

2. INSTRUCTIONS.—An instruction submitting to the jury the question as to the intelligence of an infant killed in the collision, could not have been prejudicial to defendant, because the plaintiff's evidence showed that he was a remarkably bright and intelligent boy.

3. FLAGMAN AT CROSSING—WHEN REQUIRED.—When a crossing is near a populous town, and must be crossed by a large number of people going to and from the town, both on horseback and in a vehicles, and the conformation of the surrounding country is such that one can not see trains approaching from one direction until within fifteen or twenty feet of the track, and when under certain conditions, which are not infrequent, the approach of the train or its whistle can not be heard, the railroad company should be required to have a flagman at that point to warn travelers of approaching trains, or to adopt and use some other reasonably safe mode of warning them.

SMITH, ROBBINS & THOMAS FOR APPELLANT.

1. A railroad company has the right of way of its roadbed, and may run its regular trains on time, or irregular or extra trains, as its business may require; and is only required to use ordinary care in providing and using reasonably safe means of warning to persons traveling along the highway over its track, of the approach of trains to a crossing. The track itself is a warning to the traveling public at all times. (L. C. & L. R. Co. v. Goetz, adm'r, 79 Ky., 448; L. & N. R. Co. v. Teppenhammer, 10 Ky. L. R., 401.)

2. The evidence of plaintiff showed contributory negligence, but for which the collision would not have occurred, and the peremptory instruction should have been given.

3. The question as to the intelligence of the infants stood admitted by the pleadings, and should not, therefore, have been submitted to the jury.

Newport News & Mississippi Valley Co. v. Stuart's Adm'r.

-4. The instruction as to what is required of a railroad company at its crossings to warn the public of the approach of trains is erroneous, because it points out and names certain means which had not been adopted in this case, although other reasonable means had been adopted. And that part of the instruction requiring an "effectual" mode of warning is certainly erroneous. (Lou. City Ry. Co., v. Weams, 80 Ky., 420; L. & N. R. Co. v. Brownlee, 14 Bush, 595.)

P. H. DARBY on same side.

1. The peremptory instruction should have been given, because the evidence of the appellees themselves shows that they drove the wagon on the track without any effort having been made by any of them to ascertain whether a train was approaching from the north, when any attention by any one of them to the track north of the crossing would have disclosed their danger and enabled them to avoid it. (L. & N. v. Cox, 8 Ky. L. R., 961; Given's adm'r, v. K. C. R. Co., 12 Ky. L. R., 951.)

R. O. HESTER, H. J. MOORMAN and W. H. HESTER for appellees.

1. It is the duty of those in charge of a railroad train to give timely and sufficient warning of its approach to a crossing, and a failure to do so is negligence. The sufficiency of the signal depends on circumstances—notice being the object, and the means must be sufficient to give it. (Ill. Cen. R. Co. v. Dick, 11 Ky. L. Rep., 861; Eskridge v. R. Co., 89 Ky., 374.)

2 When the view is obstructed greater care is required, and those in charge of trains should approach crossings at a less rate of speed and use increased diligence to give warning of its approach. (L. C. & L. Ry. Co. v. Goetz, adm'r, 79 Ky., 449.)

3. The running of a railroad train over a crossing where a dense population is constantly crossing the track, as in this case, without some one to give notice of the approach of trains, is negligence of the most flagrant character. (Cen. Pass. Ry. Co. v. Kuhn, 9 Ky. L. R., 727.)

JUDGE GUFFY delivered the opinion of the court.

The appellees, in separate suits in the Graves Court of Common Pleas, recovered judgments against the appellant,

and appellant's motions for new trials having been over-
ruled it prosecuted appeals to the Superior Court of Ken-
tucky, which court affirmed the judgments, and the appel-
lant obtained appeals to this court, which appeals, upon re-
quest of parties, are heard together.

It appears that W. H. Stuart, Charles Stuart, Zephyr
Wyatt and Robert Stuart attempted to cross the railroad
track in a wagon, and a collision occurred between the
wagon, and a locomotive, resulting in the instant death of
Robert Stuart and the injury of the others. Four actions
were brought against the railroal company, in which it was
charged that the collision was the result of the appellant's
negligence. One of the actions was by the personal repre-
sentatives of Robert Stuart, and one by each of the other
persons injur(

The defense in each case was a denial of negligence, and
a plea of contributory negligence on the part of the injured
parties. The pleadings, the evidence and the rulings of the
court in each case were substantially the same, and will be
disposed of in one opinion.

The highway crossed the railroad a short distance north
of the corporate line of Mayfield, Ky., and about fifteen or
twenty feet south of a deep cut. The north end is about
two hundred and eighty yards from the crossing. The
whistling post is about two hundred and sixty-five yards
from the north end of the cut. The railroad track is con-
siderably elevated above the highway, and in crossing the
grade is steep.

On account of the conformation of the surrounding coun-
try travelers upon the highway approaching this crossing
from the city of Mayfield can not see a train coming from the
north until they get within twelve or fifteen feet of the

track, but the engineer or fireman on the locomotive can see the horses to a wagon from any point in the cut, and a little distance north of it, when the horses get within twelve or fifteen feet of the track. When the wind is from the south, as it seems to have been on the evening of the injury, it sweeps through the cut and obstructs any sound coming from the north. The highway is the only road leading from the north to Mayfield, and is a thoroughfare continuously used by people going to and returning from Mayfield.

W. H. Stuart, the father of Robert and Charles, was blind; Robert was thirteen years old, Charles was younger, and Zephyr Wyatt was fourteen years old. The train that collided with the wagon was due at Mayfield at seven minutes past 6 p. m.

The evidence tends to show that the parties injured left Mayfield about half past 6, being past the time the train was due at Mayfield. The testimony conduces to show that the parties in the wagon thought the train had passed, and as they drove along their attention was directed to a freight train near the depot and south of the crossing, which train was moving to and fro. The old man cautioned the children to look and listen; he listened. At a point shortly before reaching the crossing they stopped, thinking that the freight train was about to run up to or beyond the crossing. Seeing that it moved back, they drove on, so as to cross before it returned towards the crossing. They did not see nor did they hear the whistle or other sound of the train which was approaching from the north. Just as they got on the track, and when it was too late to turn back, they saw the train almost upon them; the driver whipped up the team, and as the rear end of the wagon was about to leave the track it was struck by the engine.

Witnesses, who were just north of the cut and saw the train as it passed, testify that no whistle was blown at the whistling post, and that none was blown until it was about to enter the cut, and then only two short blasts were made in quick succession. (This evidence is contradicted by other evidence.) The train was one of the fastest on the road, its schedule time being about twenty-eight miles per hour; it was behind time, and there is evidence tending to show that it was running very fast.

Plaintiff's evidence also tends to show that if the engineer and fireman had been on the lookout they could have seen the team in time to have stopped the train or so checked its speed as to have avoided the collision.

The evidence for the defendant showed that the usual sound of the whistle was made at the whistling post, and that the whistle was sounded about the time the engine entered the cut, and there is also evidence of several persons hearing the train coming, and, seeing the danger the parties were in, shouted to them, endeavoring to warn them.

The engineer and fireman swear that they did not see the team until the engine was within forty or fifty feet of the wagon, and that it was impossible to stop the train in time to avoid the collision.

Several grounds for a new trial are relied on. some of which need not be noticed.

The evidence entitled the plaintiff to go to the jury, hence the peremptory instruction was properly refused. The second instruction is upon the question of contributory negligence, and is in the usual form, with the exception that it submitted to the jury the question as to the intelligence of Robert Stuart, the boy who was killed. There was in fact no question in the evidence on this point, as all the plaint-

iff's evidence showed that he was a remarkably bright and intelligent boy, and had driven on the road, hauling wood, etc., often, and, therefore, the jury could not have been misled or the defendant prejudiced by this portion of the instruction.

The third instruction is very seriously and earnestly objected to, which is in the following language: "The court instructs the jury that if they believe from the evidence that, by reason of the proximity of the crossing to the city of Mayfield and the number of the traveling public crossing there, or by reason of any obstruction of view of the railroad or of the hearing of the approach of trains, said crossing was exceptionally or unusually dangerous, then it was the duty of the defendant to use ordinary care to discover such danger, and, if necessary to avoid injury to travelers, to keep a flagman there to warn travelers of approaching trains, or to adopt and use some other reasonably safe and effectual mode of warning travelers of the approach of its trains; and if the jury believe from the evidence that defendant negligently failed to discover such danger, if any, or negligently failed to provide or use such means of warning as were reasonably safe and effectual to avoid injury to such travelers, and by reason thereof the injury to deceased occurred, then the defendant is liable unless deceased negligently contributed to such injury and death, as defined in instruction No. 2."

The crossing in question was near a populous town; was the only way to the town for the people in the country north of it, and was continuously used by persons on horseback and in vehicles. On account of the elevation of the track above the highway, and the steep approaches to it, it could not be crossed at an ordinary traveling gait; the deep cut and the conformation of the surrounding country were such

that a person could not see the approaching trains from the north until within fifteen or twenty feet of the track, and, if driving a horse, could not see the train until his horse's head had almost reached the track and further under certain conditions, which were not infrequent, many persons, especially when riding in a wagon, could not hear the approach of a train or its whistle.

Under the circumstances it was the duty of the company to use more precaution to avoid injury to persons using the highway than at ordinary crossings; and, those conditions existing, it was not improper to require the company to have a flagman at the point to warn travelers of approaching trains, or to adopt and use some other reasonably safe mode of warning travelers. (L. C. & L. R. Co. v. Goetz's adm'r 79 Ky., 449, 80 Ky., 103.)

But it is still further urged that the instruction is erroneous because it required the company to use an effectual mode of warning travelers. In other words, that it made it incumbent upon the company to adopt some mode that would make it impossible for a person to be injured.

We do not think that the instruction could have been so understood by the jury. The evident meaning was that the means should be reasonably effective.

The other instructions given give to the plaintiffs no right to recover unless the defendant was guilty of negligence, and manifestly the jury believed the defendant guilty of negligence in each case.

The other instructions given were not prejudicial to the substantial rights of appellant in either of the cases, and those asked by appellant were properly refused.

Judgment in each of the cases is affirmed.