## COLLINS COTTON CO. et al. v. WOOTEN-BURTON SALES CO.

No. 9897—Opinion Filed March 22, 1921.

(Syllabus.)

**1. Sales—Sale by Sample—Baled Cotton—Warranty of Quality.**

Every sale of baled cotton must be considered in the nature of a sale by sample, which amounts to a warranty that the whole bulk shall compare with the specimen exhibited.

**2. Appeal and Error — Review — Verdict—Evidence.**

Where, in an action at law, the evidence is conflicting, this court will not review the evidence to ascertain where the weight of the evidence lies; and if there is evidence reasonably tending to support the verdict, it will not be set aside.

**3. Appeal and Error—Sufficiency of Evidence—Harmless Error.**

Record examined, and held: (1) That the evidence reasonably tends to support the verdict; (2) that the remaining errors complained of are without merit or are harmless under section 6005, Rev. Laws 1910.

Error from District Court, Grady County; Will Linn, Judge.

Action by the Wooten-Burton Sales Company, a copartnership composed of R. K. Wooten and E. G. Burton, against the Collins Cotton Company, a copartnership composed of E. R. Collins and Robert W. Henderson, and against the partners individually, for damages for breach of warranty in sale of cotton. Judgment for plaintiff, and defendants bring error. Affirmed.

Riddle & Hammerly, for plaintiffs in error.

Bond, Melton & Melton, for defendant in error.

KANE, J. This was an action for the recovery of damages for the breach of an implied warranty, commenced by the defendant in error, plaintiff below, against the plaintiffs in error, defendants below. For convenience, the parties will be designated "plaintiff" and "defendants", respectively, as they appeared in the trial court. Upon trial to a jury there was a verdict for the plaintiff, upon which

judgment was duly entered, to reverse which this proceeding in error was commenced.

The petition alleges in substance that the plaintiff purchased from the defendants by sample 74 bales of low grade cotton; that the samples exhibited for the purpose of making the sale were of the grade of cotton desired by plaintiff; that upon examining the cotton after the bales were opened by a purchaser from the plaintiff it was discovered that the insides of the bales contained iron, rocks, sticks of wood, ties, and other junk and foreign substances which greatly increased the weight of such cotton over and above what it would have been if the bulk of said cotton had compared with the samples; that such iron, rocks, wood, and other foreign substances pressed therein made it necessary to rehandle and sort the same for the purpose of removing such substances, before such cotton could be used; that in order to do this it was necessary to unbale the cotton and scatter it out and repick it and remove the foreign substances therefrom, which was done, and the difference between the value of the cotton as it appeared by the samples and the value of the cotton after it was reconditioned is the amount of the damages prayed for.

The defendants denied that they either expressly or impliedly warranted the condition of said cotton or the contents of the bales, and further alleged the truth to be that they specifically advised the plaintiff of the nature, character, and condition of said cotton, and that, after an examination of the cotton in the bales and the bales of cotton themselves and with full knowledge of the facts and circumstances, plaintiff offered them 4 cents per pound therefor, which offer was by these defendants accepted.

The errors relied upon for reversal may be summarized as follows:

(1) The trial court submitted the case to the jury, and permitted the plaintiff to have judgment upon an entirely different theory of the case than it alleged in its petition.

(2) Error of the court permitting plaintiff to introduce incompetent testimony over the objections and exceptions of the defendants.

(3) Error of the court in giving certain instructions, which were excepted to by the defendants, and in refusing to give certain requested instructions offered by the defendants.

The first assignment of error is based upon the assumption that the undisputed evidence shows that the sale was made after an inspection of the property by the purchaser, and not by sample as alleged, and therefore there is a fatal variance between the pleadings and the proof. They say that, in these circumstances, the doctrine of caveat emptor applies and the purchaser was charged with knowledge of the condition of the goods purchased.

In support of this proposition they quote from Barnard v. Kellogg, 77 U. S. 383, 19 L. Ed. 987, as follows:

"No principle of the common law has been better established, or more often affirmed, both in this country and in England, than that in sales of personal property, in the absence of express warranty, where the buyer has an opportunity to inspect the commodity, and the seller is guilty of no fraud, and is neither the manufacturer nor grower of the article he sells, the maxim of caveat emptor applies."

Counsel for the respective parties agree that the evidence on the point now under consideration is not contradictory, and that it shows substantially the following situation: The plaintiff was engaged in purchasing baled cotton for resale and the defendants were engaged in the business of selling low grade baled cotton. The plaintiff, having a customer who wished to buy some low grade baled cotton for the manufacture of mattresses, approached the defendants for the purpose of procuring the cotton to fill the order. The negotiations which followed resulted in the plaintiff examining the cotton purchased in the following manner: The plaintiff and the defendants went together to the warehouse of the defendants where the cotton in bales was stored. The plaintiff saw the bales, and also drew from each bale samples of cotton, which he found to be suitable for the purpose desired. There was evidence that this was the customary way of examining baled cotton, that this mode of examination would not disclose what was in the center of the bales, and that the only way to discover that the bales contained foreign substances such as these bales were shown to contain was to reopen the bales, which was never done.

There is a line of well-reasoned cases which, while subscribing to the general rule as laid down in the principal case, hold that, on account of the limited opportunities for examination thus afforded, every sale of baled cotton must be considered in the nature of a sale by sample, which amounts to a warranty that the whole bulk shall compare with the specimen exhibited. Rose and Rogers v. Beattie, 2 Nott & McCord (S. C.) 538; The Oneieda Manufacturing Society v. Lawrence et al., 4 Cow. (N. Y.) 440; Boorman v. Jenkins, 12 Wend. (N. Y.) 566, 27

Am. Dec. 158; Beebe v. Roberts, 12 Wend. (N. Y.) 413, 27 Am. Dec. 132; Wilkirson v. Randle (Tex. Civ. App.) 29 S. W. 431.

We think the reasoning of these cases is sound. In the case at bar the evidence shows that the samples were procured in the customary way, that is, by drawing cotton from the bales, and that the deterioration complained of could not have been discovered without opening the bales, which is never done. And it is no answer to say that the samples were not drawn at the defendants' request. This being the customary manner of procuring samples, wherever cotton is sold in bales, it must be presumed that the samples were drawn by the permission and for the benefit of the defendants. In the case at bar, as we have seen, the depreciation was caused by buckles, iron, wood, ties, dirt, and various other foreign substances being enclosed in the bales. Inasmuch as it is never expected that the purchaser of baled cotton will do more in the way of examining the article purchased than the plaintiff did, and since this mode of examination will not discover the presence of such foreign substances, it seems to us that to hold the defendants upon an implied warranty that the bales were made up of cotton of some grade of fineness and did not contain large quantities of worthless foreign substances, is no great perversion of the general rule.

There is evidence, which was sharply contradicted, to the effect that the defendants told the plaintiff that the cotton was nothing but junk; that it was collected from the Galveston flood and scattered out over the yard and afterwards swept up and baled without cleaning. The issue of fact joined by this conflicting evidence being decided by the jury in favor of the plaintiff, we are not at liberty to disturb the judgment rendered on the verdict. It is well settled in this jurisdiction that where, in an action at law, the evidence is conflicting, this court will not review the evidence to ascertain where the weight of the evidence lies; and if there is evidence reasonably tending to support the verdict it will not be set aside. Harill v. Parkinson, 27 Okla. 528, 112 Pac. 970.

The remaining errors complained of are predicated upon the assumption that the sale was made upon examination, and not by sample, and become unimportant in view of what we have already held on that point. Moreover, we have carefully examined the record and are convinced that the assignments presenting errors of this class are without merit or are harmless under section 6005, Rev. Laws 1910, which provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

For the reasons stated, the judgment of the court below is affirmed.

HARRISON, C. J., and JOHNSON, MILLER, and KENNAMER, JJ., concur.