All the Justices concur.

Note.—See under (1) 27 Cyc. p. 742 (1926 Anno).

---

## ST. LOUIS-SAN FRANCISCO RY. CO. v. RUNDELL.

No. 13304—Opinion Filed March 3, 1925.

Rehearing Denied April 7, 1925.

(Syllabus.)

1. **Appeal and Error—Review of Evidence —Law Actions.**

Where, in an action at law, the evidence is conflicting, this court will not review the evidence to ascertain where the weight of the evidence lies, but if there is evidence reasonably tending to support the verdict, it will not be set aside.

2. **Railroads—Accidents at Crossings—Lack of Warning—Evidence of Negligence.**

Record examined, and held, the evidence was sufficient to submit to the jury the question of negligence of the company in failing to sound the whistle or ring the bell before approaching the crossing.

3. **Negligence—Jury Questions — Contributory Negligence and Assumption of Risk.**

Article 23, sec. 6, of the Constitution of Oklahoma, is not merely declaratory of the common law, but requires that the defense of contributory negligence and assumption of risk as to questions of fact in all cases whatsoever shall at all times be left to the jury, and the finding of the jury upon this defense is conclusive upon the court.

4. **Trial—Instructions on Weight of Evidence.**

It is not error for the court to refuse to give a requested instruction, the substance of which advises the jury that they should give more weight to the testimony of a witness who testified positively and affirmatively to a certain state of facts than to a witness who testifies negatively to the same state of facts, where the witnesses appear equally credible. Held, the requested instruction amounted to an instruction upon the weight of part of the evidence, and an attempt to have the court invade the province of the jury.

5. **Railroads—Speed at Crossings — Negligence a Jury Question.**

Whether or not, under circumstances existing which make a crossing exceptionally dangerous, the running of a passenger train at the rate of 40 miles, although not in violation of a statute or ordinance, was negligent, is a question of fact for the jury.

6. **Same.**

The general rule is a rate of speed that would be entirely safe under some conditions may be recklessly dangerous under other conditions, and it is generally held it is for the jury to determine, considering all the facts and circumstances, whether or not the speed which the train was running was an act of negligence.

7. **Same.**

Neither the Legislature nor the Corporation Commission can arbitrarily determine in advance what would constitute ordinary care or reasonable prudence in a railroad company at a crossing. Each case must stand upon its own merits, and the question is ordinarily one for the jury to determine.

### 8. Same—Speed at Country Crossings—Instructions.

An instruction which informs the jury that the law does not require the railroad company to maintain a flagman, automatic signals or bells at a railroad crossing, and leaving it to the jury whether the absence of such precaution on the part of the company is negligence under certain conditions, is not necessarily erroneous, but such an instruction is subject to criticism for the reason that it would be better not to point out in an instruction the particular means to be employed by the company in exercising the degree of care required at country crossings but rather to inform them that if on account of the dangerous character of the crossing and the amount of travel thereon, the statutory signals did not afford reasonably sufficient warning, then such other means, as the evidence showed might be and usually were employed by railroad companies at dangerous crossings, should be used, in order to prevent injury to the traveling public.

### 9. Same — Recovery for Negligent Death Sustained.

Record examined. and held, there was no error in the instruction given by the court, nor in refusing the instructions requested. Held, further, the evidence is sufficient to support the verdict.

Error from District Court, Lincoln County; Hal Johnson, Judge.

Action by Herbert Rundell, a minor, by next friend, M. S. Rundell, against the St. Louis-San Francisco Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. F. Evans, R. A. Kleinschmidt, Ben Franklin, and Adelbert Brown, for plaintiff in error.

A. N. Boatman, Chas. E. Webster, W. F. Speakman, and Streeter Speakman, for defendant in error.

LESTER, J. This action was commenced in the district court of Lincoln county, by Herbert Rundell, a minor, by his next friend, M. S. Rundell, against the St. Louis-San Francisco Railway Company, a corporation, to recover damages for the death of his father caused by one of defendant's trains colliding with an automobile in which deceased was riding, at a public crossing in, Creek county, Okla.

The allegations of the petition may be summarized as follows: One of defendant's passenger trains struck an automobile in which the deceased and a Mr. Wheeler were riding, killing them both instantly. The collision occurred at a public crossing about half way between the towns of Bristow and Depew. The public crossing was on the main traveled highway between the town of Sapulpa, the county seat of Creek county, Bristow and Depew, over which crossing a great number of people traveled daily. The highway was known and designated as the "Ozark Trail."

The acts of negligence alleged may be subdivided as follows:

(1) Failure to give the statutory signals .

(2) The crossing was in bad repair.

(3) By virtue of the great amount of traffic over said crossing and the view of an approaching train being obstructed by trees, underbrush, and by a mound or hill, and the poor condition of the crossing, the company was negligent in failing to maintain a flagman, automatic bell, or some other system at said crossing to warn the traveling public of the approach of the train.

(4) The speed the train was running at this particular place, under the facts and circumstances, was excessive.

The answer of the company was a general denial, and the further plea of contributory negligence.

A brief statement of the facts may be summarized as follows:

The deceased and a party by the name of Wheeler were in a Ford automobile on the west side of the railroad track traveling east toward the railroad crossing on the Ozark Trail, at a rate of about 20 or 25 miles per hour. The said crossing passed through and over the Ozark Trail, a public highway over which a large number of people crossed daily. The highway on the west leading toward the railroad track was down grade, and the road to the right of way was in very good condition. When the automobile reached the right of way, it slowed down and almost stopped. The distance from the track to the west line of the right of way is practically 50 feet. The approaches over the track were in bad condition; in the approach from the west there was a small ravine, ditch, or depression in the ground close to the west side of the right of way, and from the bottom of. this low place to the track was an incline of about three feet. The condition of this portion of the approach was such that a person traveling in an automobile when reaching the right of way was required to shift gears on account of the low place and the roughness of the approach and crossing. As the deceased and Wheeler reached the right of

way, Mr. Smiley and family were in a Ford Sedan car, which was standing still and across the right of way on the east side of the track. The Smileys waived or motioned to the deceased and Mr. Wheeler for the purpose and intent of advising them of the approach of the train. It was practically impossible for two cars to pass each other on the crossing or approaches thereto, and it was necessary for one to wait while the other crossed. There is another inference that can be drawn from the testimony, that the deceased and Wheeler misunderstood the signalling of the Smileys to be an invitation to come across the track while the Smileys waited on the opposite side in order to pass. The evidence discloses that on the south side of the highway west of the railroad track there were trees, underbrush, and shrubbery that obstructed the view of the public coming from the west and prevented them from seeing a train approaching from the south. To the west of the railroad track, and south, was a mound or hill which obstructed the view of the train from travelers coming from the west. There is some evidence that the underbrush to the south of the highway extended to the right of way. On the day of the accident, there was also a tent close to the right of way south of the highway which also obstructed the view of the train from one coming from the west. The view, coming from the east, was not obstructed. Where the highway crossed the track there were only four planks, or timbers, one on each side of each rail, and the ground between the two planks in the center of the track was rough. The condition of the crossing, as described by one witness, was as follows: If a party did not slow down and shift gears to low, he would likely break his car or spring. Another described the approaches and ground between the rails as being rough and chuggy. The roadbed from the hill south to the crossing was down grade; the train approached from the south and after it came from behind the hill, where there was a curve in the track, it coasted down this grade to the crossing at a speed of from 35 to 40 miles an hour.

The Smileys were on the east side of the highway watching the train approach, and testified there was no whistle blown, nor bell rung, and the train was coming down the grade without making any sound or noise whatever. The engineer and fireman and several passengers testified the whistle was blown before reaching the crossing.

The case was tried to a jury and a verdict returned in favor of plaintiff, upon which judgment was rendered. From said judgment, an appeal has been regularly prosecuted to this court.

For reversal, the plaintiff in error argues the specifications of error under three heads: First, the verdict of the jury is not supported by the evidence. Under this proposition, the plaintiff in error contends that in order to return a verdict against the defendant it was necessary for the jury to find there was a failure on the part of defendant's crew to sound the warning signal by giving the statutory warning of blowing the whistle or ringing the bell before approaching the crossing, and the evidence is not sufficient to support such a finding. Accepting this proposition as correct, was there any evidence to support a finding that the company was negligent in this respect? We think it only necessary in this respect to notice a few excerpts from the testimony of Mr. Smiley, which is as follows:

"Q. From the time you saw the smoke of this train until it came to that crossing, did they blow a whistle? A. Not that I heard; no, sir. Q. Did they ever ring the bell? A. No, sir. Q. Did they ever give any alarm of their approach? A. No, sir. * * * Q. And you say they did not whistle after you saw that smoke? A. No, sir. Q. Did they blow any whistle before they got to the crossing? A. No, sir. * * * Q. After they came out of the cut? A. No, sir."

Mr. Smiley testified it was a clear, still day; that he was in a Ford Sedan with the windows open and was stopped on the east side of the right of way waiting the passing of the train. Mrs. Uden, the mother-in-law of Smiley, who was in the car with him, also testified that she did not hear any whistle blown nor any other sound of the train, and that it was a clear, still day. Mrs. Smiley also testified it was a clear, still day and she heard no whistle. The engineer, fireman, and several other parties stated the whistle was blown.

This evidence brings the case squarely within the rule announced in the case of Collins Cotton Co. v. Wooten-Burton Sales Co., 81 Okla. 67, 196 Pac. 681, as follows:

"Where, in an action at law, the evidence is conflicting, this court will not review the evidence to ascertain where the weight of the evidence lies; and if there is evidence reasonably tending to support the verdict, it will not be set aside."

This court in the case of Wichita Falls & N. W. Ry. Co. v. Groves, 81 Okla. 34, 196 Pac. 677, where the identical question was under consideration, quoted with approval from the case of Zenner v. Great Northern

R. R. Co. (Minn.) 159 N. W. 1087, where the court, considering the same kind and character of evidence, said:

"There is evidence from which the jury might find that the train which caused a collision in this case approached without ringing a bell."

It is next contended under this specification of error that the evidence of the plaintiff in error was positive and direct and, the evidence upon behalf of the defendant in error was negative testimony regarding whether the whistle was blown, and the negative evidence will not overcome the direct and positive evidence.

The Supreme Court of Kansas, in the case of Kansas City, Ft. S. & G. R. Co. v. Lane, 7 Pac. 588, stated as follows:

"The ·testimony of one who was in a position to hear, and who was giving special attention to the sounding of the whistle, that it was not sounded, while negative in form, is a positive statement of fact; and where the witnesses had equal opportunity to hear the whistle, and are equally credible. it is generally of as much value as the testimony of one who states that it was sounded."

By applying this principle of law to the testimony, the testimony of Mr. Smiley was not negative testimony, but was a positive statement of fact.

This court had a similar state of facts in the case of Wichita Falls & N. W. Ry. Co. v. Groves, supra, and stated as follows:

"First, six or seven witnesses produced by the plaintiff, who were present and witnessed the accident, testified that they did not hear the bell ring, nor did they hear any alarm given as the train approached the crossing. This evidence was contradicted by the persons in charge of the train, who contended the bell was rung. No one else testified that the bell was rung, except those in charge of the train. It is contended, however, that the evidence of the plaintiff is simply negative evidence. This identical question was considered in the case of Zenner v. Great Northern R. R. Co., 135 Minn. 37, 159 N. W. 1087, where the court stated: 'There is evidence from which the jury might find that the train which caused a collision in this case approached without ringing a bell'."

For other cases upon this question, see Brown v. New York & H. R. R. Co., 83 N. Y. Supp. 1028, 13 N. Y. Anno, Cases, 409 (Affirmed 72 N. R. 1140); Henavie v. N. Y. C. & H. R. Co., 166 N. Y. 280, 59 N. E. 901.

It is next contended under this specification of error that the evidence shows conclusively that the proximate cause of the death of deceased was not the negligence of defendant, but it was the result of his own negligent act. This involves the question of contributory negligence, and is not a question for the court, but is a question for the jury. This matter is settled by a decision of this court in the case of Dickinson v. Cole, 74 Okla. 79, 177 Pac. 570, affirmed by the Supreme Court of the United States in the case of C., R. I, & P. Ry. Co. v. Cole, 251 U. S. 54, 64 L. Ed. 133, and Wichita Falls & N. W. Ry. Co. v. Groves, supra.

The next specification is that the court erred in refusing to give certain instructions requested by the defendant. The first instruction was, in substance, that there was no law in this state regulating the speed of trains; therefore, the defendant was not guilty, as a matter of law, in operating its train at the rate of 40 miles per hour. In support of this contention, the plaintiff in error cites the case of C., R. I. & P. Co. v. Barton, 59 Okla. 109, 159 Pac. 250. Plaintiff in error contended that this was the theory of the defense, and, as a matter of law, the speed of 40 miles an hour at this place was not an act of negligence. The question of whether the train was running at an excessive speed or whether the speed of a train constituted negligence was a question of fact to be determined by the jury. This rule is announced in the cases of C., R. I. & P. v. Barton, supra; M., K. & T. v. Stanton, 78 Okla. 167, 189 Pac. 763; C. & A. R. R. Co. v. Dillon, 123 Ill. 570, 15 N. E. 181; Ellis v. Central Calif. Traction Co. (Cal.) 174 Pac. 407; 33 Cyc. 1108. The general rule stated in 22 R. C. L. 947, is as follows:

"A rate of speed that would be entirely safe under some conditions may, however, be recklessly dangerous under other conditions, and it is generally held that it is for the jury to determine whether or not the speed at which a train was operated was negligent under all of the circumstances."

The question of whether 40 miles an hour was an excessive rate of speed to operate a train coasting down grade, without making any noise, without the ringing of the bell or blowing the whistle, when approaching a country crossing, at a place of much travel, where the view from one direction was obstructed, where the crossing was in bad condition, as heretofore described, was a question of fact for the jury, and not a question of law for the court. It is not such a state of facts upon which all reasonable men would reach the same conclusion.

It is next contended that the court erred

in refusing to give the following instruction:

"In weighing the testimony of the witnesses in this case, you are instructed that as between witnesses, equally credible in your assumption you should give more weight to the testimony of the witnesses who testify positively and affirmatively to a certain fact than you would give to that of a witness who testifies negatively to the same fact."

In support of this instruction the plaintiff in error cites the following Kansas cases: Kansas City, Ft. S. & G. R. Co. v. Lane (Kan.) 7 Pac. 587; Mo. Pac. R. Co. v. Pierce (Kan.) 18 Pac. 305; Mo. Pac. R. Co. v. Moffat et al. (Kan.) 44 Pac. 607; and St. L. & S. F. R. Co. v. Brock (Kan.) 77 Pac. 86. The Kansas cases appear to be the only cases supporting this rule.

The court, in instruction No. 24, regarding the evidence of the credibility of the witnesses, advised the jury that where two or more witnesses testify directly opposite, the jury is not bound to regard the evidence as evenly balanced, but in weighing the evidence may take into consideration the witness' interest in the result of the action, his relation to the parties, whether friendly or unfriendly, his bias or prejudice, his manner, conduct, or demeanor on the witness stand, his means of observation, and particularly noting the manner in which he has testified. We think this is all that is necessary, and correctly advises the jury regarding the weight and credibility of witnesses.

This court, in the case of Ayers v. Macoughtry, 29 Okla. 399, 117 Pac. 1088, held that refusal to give such an instruction as requested was not error. Plaintiff in error attempts to distinguish the instruction from the one offered, but this court, in passing on the same, did not recognize said distinction. Other cases supporting this proposition are the cases of Louisville, New Albany & Chicago Ry. Co. v. Shires, Admr., 108 Ill. 617; Himrod Coal Co. v. Clingan, 114 Ill. App. 568; Lockridge v. Minneapolis & St. L. Ry. Co. (Minn.) 140 N. W. 834; Fleenor v. Oregon Short Line Co. (Ore.) 102 Pac. 897.

This court has announced the rule:

"The giving of a requested instruction upon the weight of any part of the evidence, or otherwise invading the province of the jury is reversible error." See Grayson v. Damme, 59 Okla. 214, 158 Pac. 387.

We think if the court advised the jury that one person's testimony who testifies to a positive fact is of more probative force than that of a person who testifies to a negative proposition, the court would be invading the province of the jury. The instruction given by the court was sufficient upon this proposition.

There is another reason why the instruction was properly refused,—for the reason it assumed the testimony of Mr. Smiley was negative, when in force and effect it was a positive statement upon a question of fact, as heretofore stated in this opinion.

It is next contended that the court erred in giving instruction No. 19, which, in substance, was as follows: The jury was instructed that there was no law in the state requiring the railroad company to maintain a flagman, automatic system of signals, or bells at railroad crossings, and whether or not the railroad company exercised ordinary care in failing to maintain such flagman or automatic signals or bells at a particular crossing was a question for the consideration of the jury. The jury, in considering whether or not the defendant in this case was negligent for failure to maintain a flagman or automatic bell or signal at the crossing involved in this case, may take into consideration the nature of the crossing, the approaches thereto, and the conditions surrounding said railroad crossing and all the other facts and circumstances appearing in the evidence in the case.

It is first contended that under and by virtue of section 4, ch. 53, Sess. Laws 1919, the Corporation Commission has exclusive jurisdiction to determine and prescribe the manner of crossing and the necessary precaution to be taken by the railroad company to avoid accidents, and the Corporation Commission had not required the maintaining of the flagman or installation of automatic bell or signals, and this relieved the railroad company from liability where none had been ordered by the Corporation Commission. No cases have been cited supporting this theory of plaintiff in error, but the following cases support the theory that the common-law duty to provide such protection is not relieved by said statute, and especially where the authorities have not acted. See Evans v. Erie R. Co., 213 Fed. 129; Grand Trunk Ry. Co. v. Ives (U. S.) 36 L. Ed. 485; Guggenheim v. Lake Shore & M. S. Ry. Co. (Mich.) 33 N. W. 161.

In the case of Grand Trunk Ry. Co. v. Ives (U. S.) 36 L. Ed. 485, supra, in which Mr. Justice Lamar rendered the opinion, it is said:

"Neither the Legislature nor Railroad Commissioners can arbitrarily determine in advance what shall constitute ordinary care or reasonable prudence in a railroad com-

pany at a crossing; each case must stand upon its own merits and the question is ordinarily one for the jury to determine."

It is next contended that as a matter of law, under the facts and circumstances surrounding this peculiar crossing, it was error to submit this question to the jury. This court in the case of Wichita Falls & N. W. Ry. Co. v. Groves, supra, announced the rule that the court may, under proper circumstances, submit the question of whether ordinary care required the railroad company to maintain gates, flagmen, or automatic bells or signals or some other appliances, when its trains were approaching a busy city street crossing. One of the leading cases upon this question is the case of Grand Trunk v. Ives (U. S.) 36 L. Ed. 485. The court, in the body of the opinion, stated as follows:

"It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous; as, for instance, that it is in a thickly populated portion of a town or city; or that the view of the track is obstructed either by the company itself or by other objects proper in themselves; or that the crossing is a much traveled one and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason of bustle and confusion incident to railway or other business, or by reason of some such like cause; and that a jury would be not warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country. The following cases are illustrative of various phases of the rules we have just stated: Eaton v. Fitchburg R. Co., 129 Mass. 364; Bailey v. New Haven & N. R. Co., 107 Mass. 496; Penn. R. Co. v. Matthews, 36 N. J. L. 531; Penn. R. v. Killips, 88 Pa. St. 405; Kansas Pac. R. Co. v. Richardson, 25 Kan. 391; State v. Philadelphia & P. R. Co., 47 Md. 76; Welsch v. Hannibal & St. Joe R. Co., 72 Mo. 451; Frick v. St. Louis, K. C. & N. R. Co., 75 Mo. 595; Pittsburgh, etc., Ry. v. Yundt, 78 Ind. 373; Hart v. Chicago, R. I. & P. R. Co., 56 Iowa, 166; Kinney v. Crocker, 18 Wis. 74."

The court also in discussion cites with approval the case of Cincinnati, N. O. & T. P. Ry. Co. v. Champ (Ky.) 104 S. W. 989, the 5th, 6th, and 7th paragraphs of the syllabus being as follows:

"5th. Where a railroad crossing is unusually dangerous, the company must employ such means as are reasonably necessary, considering its character, to warn travelers of the approach of trains; and this duty may require the presence of a flagman, even if the railroad commission has not required one.

"6th. What degree of care is required of a railroad company to protect travelers at crossings depends upon the facts of each case and is a question for the jury.

"7th. At exceptionally dangerous crossings, if the railroad company does not choose to have a flagman or other safety devise, and the statutory signals are not sufficient, the speed of the train must be so regulated as not to unnecessarily impair the safety of persons using the highway."

See, also, Tisdale v. Panhandle & S. F. R. Co. (Tex.) 228 S. W. 133, 16 A. L. R. 1264; Newport News & M. Valley Co. v. Stewart, 99 Ky. 496, 36 S. W. 528; Hubbard v. Boston & A R. Co., 62 Mass. 132, 38 N. E. 366; Texas & N. O. R. Co. v. Pearson (Tex.) 224 S. W. 708.

We have heretofore described the condition surrounding this crossing, and while a country crossing, the surrounding conditions and circumstances make the same extra hazardous, especially to those traveling upon the public highway coming from the west. The crossing was made more hazardous by reason of the condition of the approaches to the crossing. The approaches on each side are about 50 feet in length, and the witnesses described the same as very rough and chuggy; not only the approaches, but that portion of the crossing between the rails. The distance a party coming from the west could see a train coming from the south when he reached the west side of the approach to the crossing, according to the evidence, was from 200 to 400 feet. An illustration of what might occur can be stated as follows: If a party coming from the west should stop on the west line of the approach before starting across the track, he would travel a distance of 55 or 60 feet before he would be across the track to a place of safety. If he were traveling six miles per hour over this rough and chuggy road and up grade, a train traveling at the rate of 42 miles an hour would travel seven times that distance, or a distance of 385 to 420 feet in the same time. If the party as he reached the right of way could not see a train over 300 feet that was coming from the south, it would be possible for a party to look, and see no train approaching, start across the track at the rate of six miles an hour, and be struck by a train coming from the south that was not in sight when he looked, if the train was running 42 miles an hour. This illustration makes it apparent that the crossing was an extraordinarily hazardous crossing when a train was running at a rate of speed of 42 miles an hour.

We think the rule announced in the case of Cincinnati, N. O. & T. P. Ry. Co. v. Champ (Ky.) 104 S. W. 898, in the seventh syllabus paragraph heretofore copied herein, is the correct rule, and that may be stated as follows: A country crossing, which is extraordinarily hazardous, by reason of the approaching train being obstructed, requires the company to either station a flagman, automatic bell, or give some other signal at said crossing, or requires a continuous ringing of the bell, when approaching said crossing, or the speed of the train must be regulated so as not to impair the safety of people traveling over said crossing, and when the facts exist, it is then the duty of the court to submit this question to the jury.

The evidence regarding the amount of travel upon this road is uncontradicted. It is the main traveled road between Oklahoma City and Tulsa; all the traffic of the oil fields between the towns of Drumright and Shamrock on the west, and the towns of Depew, Bristow, and Sapulpa and Tulsa, on the east, both passenger and freight traffic, passed over this crossing, as this was the only road and crossing at that time and prior thereto, that was open to the general public between these points.

The instruction must be considered in the light of the theory upon which the parties tried this case. It was contended by the railroad company in the trial that sounding the whistle or ringing the bell, as required by statute, at the whistle post south of the crossing, which was approximately 1,700 feet, was all the precaution necessary. They also contended it was unnecessary to continue the ringing of the bell or sounding the whistle after the train passed the whistling post. It was further contended that they had a right to run at a speed of 40 miles per hour. The train was running at that rate of speed at the time of the accident.

The authorities above cited abundantly sustain the proposition that railroad companies owe the public the duty of maintaining a flagman, a system of automatic bells, or other safeguards in towns and cities at crossings which are unusually dangerous or attended with more than ordinary hazards, especially where the same are much traveled. It cannot be said, of course, that they owe the public this duty at ordinary crossings in the country where there could be no unusual danger or extraordinary hazard. Whether or not any given state of facts describing the surroundings of any particular crossing is such as to make such crossing an extraordinary hazard is a question solely for the determination of the jury, unless only one

conclusion could be drawn therefrom by all reasonable men.

Again referring to instruction No. 19, to which the plaintiff in error so earnestly objects, we do not think, under the evidence in the case, it is necessarily erroneous. The court, in effect, instructed the jury that the law did not require the railroad company to maintain a flagman, automatic signal, or bells at a railroad crossing, and left it to the jury to determine whether the absence of such precaution upon the part of the company was negligence under certain conditions. The substance of such an instruction has been approved in a large number of cases; however, we do think that the instruction is subject to criticism, for the reason that it would be better not to point out in an instruction the particular means to be employed by the company in exercising the degree of care to be used at a country crossing, but rather to inform the jury that if, on account of the dangerous character of the crossing and the amount of travel thereon. the statutory rules did not afford reasonably sufficient warning, that such other means, as the evidence might be, and usually were employed by railroads at dangerous crossings, should be used.

This criticism was adopted in the case of Cincinnati, N. O. & T. P. Ry. Co. v. Champ, 104 S. W. 989.

In the case of C. & O. Ry. Co. v. Gunter, 108 Ky. 362, the court uses the following language:

"The company was required only to use such means to give warning of the approach of trains as, considering the character of the crossings, were reasonably sufficient to warn travelers of the approach of trains. and the jury is the judge of the reasonable sufficiency of the means actually employed. Whether the means employed were reasonably sufficient under the circumstances of this case, and considering the nature of the crossing, and the physical conformation of the country surrounding it—that is, whether they were such as an ordinarily prudent person operating a railroad would have adopted under like circumstances, was a question for the jury to decide under proper instructions. It is not required by the law that the means adopted should prove effective. The care required of the company must be commensurate with the danger. Where it has created an extraordinary danger, it is required to exercise extraordinary care. What is due in the particular case must depend on the existing state of circumstances at the time of the injury, and is a question for the jury to decide."

Many of the authorities, referring to the degree of care to be exercised at crossings on the part of railroad companies, different-

iate between the care to be exercised at a country crossing and a crossing located in a town or city, and in the majority of the cases the doctrine is applicable to the particular facts therein. It is not difficult to understand that, as a rule, a railroad crossing in a city or town is used by the public in traveling to a greater extent than over an ordinary crossing located in the country. As a rule, where there is a large number of people, the travel is more extensive; that, where residences and business buildings are more dense, the obstruction to the view of approaching trains is more difficult. If, however, a crossing in the country is as frequently traveled as a crossing in a city or town, and the obstruction to the view of an approaching train is as great as in a city or town, then the degree of care required between the two would be coequal, in order to avoid injury to the traveling public. Within the last few years, there has been a great change in the mode of travel; thoroughfares have been built from funds appropriated by federal, state and county government, thereby affording roadways which have become the main arteries of travel through the several units of government. Many of them have become continental in their character. The tremendous use of motor vehicles, together with the building of good roads, has accelerated travel on the main highways almost beyond comprehension. In fact, travel has become so intense on many of our leading highways that it has become necessary to employ officers whose duty it is to patrol these highways and prevent speeding thereon, in order to lessen the danger of travel. Necessarily these highways traverse over railroad crossings without reference to whether such crossings are located in the city, towns, or in the country, and wherever such crossings may be located, and the travel is extensive, and the crossing is dangerous on account of obstruction to the view of approaching trains, the railroad company must exercise that reasonable degree of care commensurate with such danger in order to avoid injury to the traveling public.

We therefore conclude there was no error in refusing the instruction requested. The instruction given fairly submits the question of fact for the jury, and the evidence is amply sufficient to support the verdict.

For the reasons stated, the judgment of the court is affirmed.

NICHOLSON, C. J., BRANSON, V. C. J., and HARRISON, MASON. PHELPS, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 4 C. J. p. 858; (2) 33 Cyc. p. 1104; (3) 29 Cyc. pp. 640, 659; (4) 38 Cyc. p. 1741; (5) 33 Cyc. p. 1108; (6) 33 Cyc. pp. 972, 1108; (7) 33 Cyc. p. 972; (8) 33 Cyc. pp. 1102, 1130; (9) 33 Cyc. p. 1087; 38 Cyc. p. 1741.