## ST. LOUIS-S. F. RY. CO. v. RUSSELL.

No. 17440. Opinion Filed April 24, 1928.

(Syllabus.)

**1. Appeal and Error—Review—Verdict Reasonably Supported by Evidence not Disturbed.**

In an action at law, where the evidence is conflicting, the Supreme Court will not review the evidence to ascertain where the weight of the evidence lies. If there is any evidence reasonably tending to support the verdict, it will not be set aside.

**2. Negligence — Contributory Negligence Question for Jury—Requested Instruction Properly Refused.**

Under section 6, art. 23, Constitution of Oklahoma, the jury alone can determine whether such facts as they find to exist constitute contributory negligence, and it is not error for the trial court to refuse to instruct the jury that a certain state of facts, if found to be true, constitute contributory negligence.

**3. Railroads—Liability for Injuries to Truck Driver Struck by Train at Crossing—Recovery Sustained.**

Record examined, and held, that the instructions properly defined and submitted the issues in the cause to the jury; and that it does not appear that appellant suffered any injury or prejudice by reason of any alleged errors.

Commissioners' Opinion, Division No. 2.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by H. E. Russell against the St. Louis-San Francisco Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

E. T. Miller and Stuart, Cruce & Franklin, for plaintiff in error.

A. F. Moss, O. H. Searcy, S. J. Montgomery, and H. R. Young, for defendant in error.

JEFFREY, C. This is an action commenced in the district court of Tulsa county by H. E. Russell, as plaintiff, against the St. Louis-San Francisco Railway Company, as defendant, for damages for personal injuries received by plaintiff when a truck which he was driving was struck by defendant's passenger train. Plaintiff alleged that defendant's railroad tracks ran in a southwesterly direction from Blackwell, Okla., and crossed a public highway about one-half mile from the Blackwell depot, which highway ran east and west; that about ten o'clock on the morning of May 11, 1923, plaintiff, while driving an automobile truck upon said highway in an easterly direction, and in the exercise of due care for his own safety, and while attempting to cross defendant's railroad track, was struck by defendant's passenger train coming from the north, which resulted in a broken limb and other injuries to his body, for which he asked damages in the sum of $3,000. Plaintiff also alleged that the defendant's employees and servants in charge of said train carelessly and negligently failed to sound the whistle and ring the bell before approaching said public highway crossing, as required by law; and that by reason thereof plaintiff was not apprised of the approach of said train; and that his injuries sustained were the direct and proximate result of such carelessness and negligence. Defendant denied all allegations of negligence, and alleged that all proper signals were given, but that defendant's injuries resulted from his own negligence; and that his own negligence contributed to the injury. The cause was tried to a jury, and a verdict was rendered in favor of plaintiff for the sum of $2,800. Judgment was rendered thereon, and defendant has appealed to this court.

The first assignment of error presented is that the verdict of the jury is not sustained by sufficient evidence. The only question of negligence which was submitted to the jury, and upon which a verdict could be based, was whether or not defendant's employees and servants in charge of said train gave the statutory signals required to be given before crossing the public highway in question. This will necessitate a consideration of the evidence on this point. We may safely say that the following facts are undisputed: The defendant's railroad runs in a southwesterly direction from Blackwell, and crosses the public highway in question about one-half mile from defendant's depot at Blackwell. The Santa Fe Railway Company's tracks cross plaintiff's track twice between the depot and highway crossing; that on the morning plaintiff was injured the train stopped at both railroad crossings and gave the usual whistle; and that the whistle was again blown immediately before the train struck plaintiff's truck. It is also undisputed that at the time of the injury, and for a short period prior thereto, plaintiff was driving an automobile truck in an easterly direction upon said highway at the rate of about 12 miles per hour; that a string of tank cars on a siding along the north side of the highway obstructed his view of defendant's track to the north until he arrived within approximately 20 feet of

the track; that plaintiff listened for the train when he was between 100 and 200 feet of the track, and that when he first observed, the approaching train, he was within a very few feet of the track, and the train was right on him.

Plaintiff was asked if, prior to the time he saw the train about 20 feet away, it had blown the whistle or rung the bell, and he gave the following answer:

· "A. It evidently—it had not blown a whistle or rang a bell."

Ray Walcher, as a witness, gave the following testimony:

"Q. After this Frisco train crossed the Santa Fe crossing, prior to the time it got to the point where this section line crosses it, was the bell rung or the whistle blown? A. No, sir. Q. There is no doubt about, that? A. No, sir; not to my mind."

This witness again on cross-examination, testified that the train never whistled after stopping at the Santa Fe crossing. He testified that he heard the whistle at the Santa Fe crossing, and was within 150 feet of the track, and there was no obstruction between him and the train. B. G. Martin, as a witness, testified that he heard the train, whistle at the Santa Fe crossing, and that he heard the short blasts which were given just before the train struck plaintiff's truck, but did not hear any other whistle or bell between the highway and the Santa Fe crossing. He also testified that the train could have whistled shortly after crossing the Santa Fe tracks, and escaped his hearing. That there is positive evidence that the train did not give the statutory signals after stopping at the Santa Fe crossing, and until it was within a very few feet of the plaintiff's truck, there can be no doubt. And/ unless we can say, as a matter of law, that the signals given at the time the train stopped at the Santa Fe crossing complies with the statutory requirements, we must necessarily hold that the evidence was conflicting on this point, properly submitted to the jury and sufficient to sustain the verdict.

A number of witnesses for defendant testified that the proper signals were given immediately after the train had passed over the Santa Fe crossing. Counsel for defendant say that plaintiff's evidence is negative in character, and is not sufficient to overcome the positive testimony that the signals were given. With this we do not agree. Some of the evidence above referred to is positive in form as well as character. Other evidence negativing the giving of the signals is negative in form, but not purely of a negative character. It has been repeatedly, held by this court, and many others, that, evidence that one did not hear a signal given, when he was in a position to hear and could, have heard had it been given, is not purely negative in character, but is a positive statement of a fact. The value of such, testimony depends upon whether the witness was in a position to hear, and the amount of attention he gave the giving of signals. Zenner v. Great Northern Railroad Company (Minn.) 159 N. W. 1087; St. Louis & S. F. Ry. Co. v. Rundell, 108 Okla. 132, 235 Pac. 491; Wichita Falls & N. W. R. Co. v. Groves, 81 Okla. 34, 196 Pac. 677; St. Louis-San Francisco Ry. Co. v. Robinson, 99 Okla. 2, 225 Pac. 986.

Counsel for defendants cite Oklahoma, Union Ry. Co. v. Houk, 109 Okla. 187, 235 Pac. 499, and Missouri Pacific R. Co. v. Merritt, 104 Okla. 77, 230 Pac. 513, as sustaining their contention. The facts in these cases distinguish them from the case under consideration, and are not controlling in this case. And aside from the negative form of testimony, two witnesses testified that no whistle was blown or bell rung after crossing the Santa Fe tracks.

Section 5531, C. O. S. 1921, provides that each locomotive engine must be equipped with a steam whistle, or a bell, and the whistle must be sounded or bell rung at the distance of at least 80 rods from the place where the railroad crosses any other road or street. This section provides for a penalty for failure to comply therewith, and for all damages which shall be sustained by any person by reason of such neglect. Practically all of the witnesses, both for plaintiff and defendant, place the distance between the highway and the Santa Fe crossing at a little more than a quarter of a mile. The Legislature certainly did not intend that only a signal given at exactly 80 rods before arriving at a highway crossing would be sufficient. The section indicates that such signals may be given at a little greater distance, but this section has reference to a moving train. Certainly, a signal at exactly 80 rods given by a standing train several minutes before the train proceeds to make a crossing would not comply with the statute. The evidence is that the train stopped at the Santa Fe crossing, sounded its whistle and pulled on. The evidence does not show how long the train stopped, but if it came to a full stop and immediately started again, we could not say, as a matter of law, that this was a compliance with the statute, but that question would be one for the jury under proper instructions. All witnesses, except one,

place the distance at a little more than a quarter of a mile. It is common knowledge that a much greater time would be required for a standing train to start up and make a quarter of a mile than for one already traveling at the usual rate of travel. One witness, who testified for defendant, placed the distance at 400 feet. The evidence as to whether the statute was complied with is conflicting. There is evidence from which the jury might find that the train approached the highway. crossing without complying with the law in this regard. In an action at law, where the evidence is conflicting, this court will not review the evidence to ascertain where the weight of the evidence lies; and if there is any evidence reasonably tending to support the verdict it will not be set aside. Collins Cotton Co. v. Wooten-Burton Sales Co., 81 Okla. 67, 196 Pac. 681; St. Louis & S. F. v. Rundell, 108 Okla. 132, 235 Pac. 491.

It is next contended that the trial court erred in refusing to give defendant's requested instructions Nos. 5 and 12. Requested instruction No. 5 is as follows:

"Whether or not it is the duty of a traveler along the highway to stop before he drives his automobile upon a railway crossing, depends upon the situation of the particular case, and the reliances he may reasonably place, under the circumstances, on his opportunities for seeing and hearing without taking the precaution of stopping. If the view is unobstructed, so that an approaching train, before it reaches the crossing, can be seen, there is no occasion for the traveler to stop for the better exercise of his sense of sight or hearing. On the other hand, if the view is obstructed so that the traveler's sense of sight is interfered with until he arrives at a place within a short distance of the crossing, then it is his duty to stop or check his speed to such an extent so that he will be able to bring his car to a stop after he reaches a place where he can definitely determine whether or not a train is approaching, and before he reaches a place of danger. You are instructed that if you find from the evidence in this case, that plaintiff's view of the oncoming train was obstructed until he reached a point so near the railway track to make it impossible to stop his car after he had reached a point where he could see said train, then you are told that it was his duty to stop his car before driving upon said track, or to check the speed thereof to such an extent so that it could be stopped after the driver had passed such obstructions and before the car reached a place of danger, and you are told, in this connection, that if plaintiff, at the time of his injuries. failed to observe these rules, then he would be guilty of negligence, and if you believe that he was guilty of such

negligence, and same contributed to his injuries, then he cannot recover herein."

In the case of Folsom-Morris Coal Mining Co. v. Scott, 107 Okla. 178, 231 Pac. 512, this question was before this court and it was there said:

"It is not error for the trial court to refuse to instruct the jury that certain fact or facts, if found to be true, constitute in law contributory negligence. Under section 6, art. 23, Constitution of Oklahoma, the jury alone can determine as to whether or not such facts as they find to exist constitute contributory negligence."

Again the question was before this court in the case of Midland Valley Railroad Co. v. White, 109 Okla. 60, 234 Pac. 762. It was there held that the standard for guiding the jury in considering the question of contributory negligence on the part of plaintiff is what would be the action of a reasonably prudent person of the age and experience of plaintiff under the conditions and circumstances of the particular case. The third paragraph of the syllabus of that case is as follows:

"It is error for the court to substitute for this guide a given state of facts as constituting contributory negligence for the guidance of the jury in considering the question of negligence, if any, on the part of the plaintiff."

Section 6, art. 23. of the Constitution of Oklahoma provides that the defense of contributory negligence, or of assumption of risk, shall in all cases whatsoever be a question of fact, and shall at all times be left to the jury. This court has zealously guarded the rights reserved to parties litigant by the provisions of this section. An instruction such as here requested tends to invade the province of the jury on the question of contributory negligence in violation of the Constitution. If the trial court were permitted to instruct the jury that the particular state of facts incorporated in said instruction constitutes negligence on the part of the plaintiff, the question of contributory negligence would be treated as one of law and not one of fact. As to whether the facts found by the jury to exist constitutes negligence on the part of plaintiff is for the jury alone to determine. The effect of the instruction offered is to substitute the judgment of the court for that of the jury in violation of a constitutional provision. The court properly defined contributory negligence, and it was not error to refuse requested instruction No. 5. See. also. Wichita. Fall & N. W. R. Co. v. Woodman. 64 Okla. 326, 168 Pac. 209. Counsel for defendant cite

the case of Hines, Director General, v. Dean, 96 Okla. 107, 220 Pac. 860, as sustaining their contention on this point. This case is not controlling. It was there held that the requested instruction correctly stated the duty resting on a traveler upon a public highway before entering upon a railway crossing, and should have been given the jury, but the instruction there requested is almost identical with instruction No. 9, which was given the jury in the case at bar.

Defendant's requested instruction No. 12 is as follows:

"Gentlemen of the Jury: You are further instructed that the engineer of a train, on seeing a vehicle on the public road approaching the intersection of the said road with the railroad track, has a right to presume that the driver of that vehicle will stop said vehicle or car in time to avoid a collision with the train."

There is no evidence in the case to the effect that the engineer, or any other employee of defendant company, saw plaintiff about to cross defendant's track until the train was within a very few feet of the highway crossing. Defendant offered in evidence photographs of the crossing, which show that plaintiff could not have been seen by the engineer until the truck was within a very few feet of the tracks, and plaintiff testified that when he first saw the train, he was too close to the track to stop. In so far as the record discloses, when plaintiff was first in a position to be seen by the employees on the train, the train could not have been stopped so as to let him pass uninjured, and plaintiff could not stop before reaching the tracks. Counsel for defendant say that, in view of the character of cross-examination of one of defendant's witnesses, this instruction was proper. The fireman testified that the engineer applied the emergency brakes about 200 feet before he reached the highway, and blew the whistle about 50 to 75 feet before reaching the highway. Counsel for plaintiff then asked why the engineer did not give the signal 250 feet from the crossing when the engineer and witness first saw the man. The question in a measure assumes facts not proven, but we do not think there is any evidence which would justify this instruction, nor do we think the question propounded by counsel for plaintiff raised such an issue or necessitated the giving of the instruction. We think the evidence discloses that the engineer did everything possible to stop the train and warn plaintiff as soon as he saw plaintiff's truck. The court confined the questions of negligence in its instructions to whether or not the statutory signals were given, and told the jury, in substance, that unless they found from the evidence that the statutory signals were not given, a verdict should be returned for defendant.

The last assignment of error is that the trial court erred in admitting incompetent, irrelevant, immaterial, and prejudicial testimony offered by plaintiff over the objections of defendant. J. H. Robinson and R. J. Hotaling, who were fireman and conductor, respectively, on the train that struck the truck, testified for defendant that the whistle was blown at the whistling post 80 rods from the highway crossing. On cross-examination, they were asked, in substance, if they were ever on a Frisco train when the whistle was not blown at the whistling post. Robinson testified that he had been on a very few occasions. Hotaling testified that he had not to his knowledge. The court, in commenting upon the objection to the questions, said that if it was for the purpose of determining whether they might remember about this particular crossing it would be admissible. Counsel for plaintiff stated that that was the purpose of it, and the court overruled the objection. The rule requiring cross-examination to be confined to matters concerning which the witness has been examined in chief is liberally construed so as to permit any question to be asked which reasonably tends to explain, contradict, or discredit any testimony given by the witness in chief, or to test his accuracy, memory, skill, veracity, or credibility. This does not mean that cross-examination may be extended so as to introduce independent facts which tend to prejudice the opposing party. We do not think the questions and answers complained of were entirely proper, but in view of the limited purpose for which the court announced the questions might be asked, and the nature of the answers given, we do not think defendant was prejudiced thereby. From an examination of the whole record, we are of the opinion that defendant had a fair trial.

The judgment of the trial court is therefore affirmed.

BENNETT, HERR, DIFFENDAFFER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 853, §2834; 2 R. C. L. p. 206: 1 R. C. L. Supp. p. 444; 4 R. C. L. Supp. p. 92; 5 R. C. L. Supp. p. 81: 6 R. C. L. Supp. 76. (2) 29 Cyc. pp. 640, 653. (3) 4 C. J. p. 968, §2951; 38 Cyc. p. 1619.