JAMES ALCORN, Respondent, v. ST. LOUIS & HANNIBAL RAILROAD COMPANY, a Corporation, Appellant.*

St. Louis Court of Appeals. Opinion filed May 4, 1926.

1. **RAILROADS: Fires: Set by Locomotive Sparks: Evidence: Jury Case.** In an action against a railroad for damages for property loss by fire alleged to have been caused by sparks from an engine, evidence reviewed and *held* sufficient to justify the submission of the case to the jury.

2. ————: ————: ————: ————: **Circumstantial Evidence.** Proof as to setting fire, alleged to have been caused by sparks from an engine, need not necessarily consist of actually seeing the sparks leaving the engine and starting the fire, circumstantial evidence being sufficient.

3. **INSTRUCTIONS: Fires: Set by Locomotive Sparks: Damages: Difference Between Reasonable Value of Growing Timber Before and After Fire: Instruction Not Erroneous.** In an action against a rail-
219 Mo. App.—42.

road for damages for loss or damage to growing timber by fire alleged to have been caused by sparks from an engine, where the evidence showed the damaged timber was fit for wood, posts, and ties, and the value was considered on such basis when separated from the soil, an instruction on the measure of damages as to the difference between the reasonable value of such growing timber just before and after the fire *held* not erroneous.

4. ———: ———: ———: ———: **Market Value at Market Season of Unmatured Dewberry Crop Destroyed Less Certain Expenses: Instruction Not Erroneous.** In an action against a railroad for damages to an unmatured dewberry crop by fire alleged to have been caused by sparks from an engine, an instruction on the measure of damages which told the jury to consider the market value of the dewberry crop at the time of the fire, taking into consideration the market value of said dewberry crop at the market season of same, less the expense of the cultivation, harvesting, and marketing of the crop, *held* sufficiently definite and not erroneous.

5. **EVIDENCE: Measure of Damages: Value of Damages to Timber from Fire Set by Locomotive Sparks: Opinion Testimony: Admission Proper Where Witnesses Qualify.** In an action against a railroad for damages for loss of timber by fire, permitting the witnesses to give their opinion as to the value of the damages to the timber after qualifying as to their knowledge of the damages and the market values, *held* not error.

6. ———: ———: **Damage to Timber and Dewberry Crop from Fire Set by Locomotive Sparks: Exclusion of Evidence of Purchase Price of Land: Proper.** In an action against a railroad for damages to timber and unmatured dewberry crop from fire, the exclusion of evidence seeking to show what plaintiff paid for the land or its lack of value *held* not error.

*Corpus Juris-Cyc. References: Damages, 17 C. J., p. 889, n. 35; p. 890, n. 36, 37; p. 891, n. 49 New; p. 1040, n. 3 New. Evidence, 22 C. J., p. 584 n. 36; p. 588, n. 81. Railroads, 33 Cyc., p. 1382, n. 72; p. 1391, n. 13; p. 1395, n. 42; p. 1398, n. 55.

Appeal from the Circuit Court of Pike County.—*Hon. Edgar B. Woolfolk,* Judge.

Affirmed.

*Hostetter & Haley* for appellant.

*J. E. Thompson* for respondent.

DAUES, P. J.—This is an action for damages for property loss by fire, alleged to have been caused by sparks from an engine of the defendant railroad company. Plaintiff recovered a verdict and judgment for $167.50, and the defendant has appealed.

The pleadings are not in controversy. It is enough to say that the petition alleges that defendant's railroad runs within a quarter of a mile of plaintiff's land, there being a meadow belonging to other persons between plaintiff's land and defendant's right of way; that the defendant ran a locomotive which was improperly constructed over its tracks so that sparks of fire escaped and set fire to defendant's right of way and the lands adjoining thereto, the fire spreading to plaintiff's premises and thereby destroying eight acres of growing timber and burning ten loads of wood, and also destroying a quarter of an acre dewberry patch.

The answer is a general denial.

The assignments of error are that the defendant's demurrer to the evidence should have been sustained because of its insufficiency to justify submission to the jury; that the instruction given on behalf of plaintiff on the measure of damages as to the growing timber is erroneous, and that the court erred in the admission and exclusion of testimony.

The following is a short recital of the facts adduced by plaintiff, which we think shows that the court properly ruled the demurrer.

Plaintiff testified that he owned this little tract of land, about a quarter of a mile north of defendant's railroad; that he was in the berry business, and had been so engaged for twenty-five years; that between his land and the defendant's right of way there is a forty-acre tract of land owned by another person which was in meadow except a small strip seven or eight rods wide adjacent to defendant's right of way. The fire broke out about eight o'clock in the morning of April 23, 1924. At

this point there is a steep grade on the railroad, running about two miles north and a half a mile east and south of the plaintiff's land, and it was shown that very frequently the trains were stalled in attempting to run this grade. At the time the fire was discovered, there was a strong wind blowing from the direction of the right of way towards the property of the plaintiff. It was dry weather at the time. The proof shows that a passenger train had passed there about seven o'clock on that morning and a freight train followed about eight o'clock of the same morning; that the steam of the engine of the latter train in making this steep grade was heard puffing very loud, indicating that the engine was pulling hard; that a few minutes later plaintiff saw smoke in two places along the right of way. There being a narrow strip of timber next to the right of way, plaintiff could not definitely locate the place of the fire, although he says he could see it was near or upon the right of way; that he could not see the railroad from where he was working, but that he could clearly hear the train and could see the smoke that was being emitted by it. On cross-examination, the following questions and answers appear:

"Q. You never saw the engine? A. No, sir.

"Q. Consequently you don't know how the engine was constructed; whether faulty constructed or not, do you? A. I seen the sparks fly out.

"Q. Just answer my question. A. No, sir.

"Q. You never saw this engine that was drawing this train, if you think it was a train, you never saw the engine at all? A. No, sir."

Plaintiff said he did not go down to the right of way until the next morning after the fire; on the day of the fire he was engaged as best he could in fighting the fire. When he got to the right of way the next morning he noticed that the burned area reached up to the ends of the ties of the railroad, and that the fire had burned along the track for about a quarter of a mile; that the fire was on the north side of the track; that he "noticed there were sparks thrown out along there and that the

fire had burned along up to the end of the ties for a quarter of a mile; I could tell that the fire had done the damage the day before.''

Defendant produced its section foreman, who testified that there had been many fires along the railroad at this point. There is also evidence that the defendant, through its claim agent, had taken two men to this place after the fire to estimate the damage done by the fire.

Learned counsel for defendant insist that it devolved upon plaintiff to prove that defendant's locomotive engine actually set out the fire which damaged and destroyed his property. This statement is sometimes used in the reports as an abstract proposition of law. This must be taken, however, in connection with the principle that the proof as to setting fire need not necessarily consist of actually seeing the sparks leaving the engine and starting the fire. Circumstantial evidence is sufficient.

As was said in the case of Jones v. Railroad, 204 S. W. 192:

''We agree that, notwithstanding the statute in a fire case relieves a plaintiff from proving negligence on the part of the railway company, yet 'he must still charge and prove that the fire was actually communicated to his property by one of defendant's locomotives in use on its road.' But it is agreed all round that this proof of actually setting fire need not necessarily consist of seeing sparks leave the engine, fall upon and ignite combustible material on the defendant's premises. Circumstantial evidence will suffice.''

And likewise said the Springfield Court of Appeals in the case of Slack v. Railroad, 187 S. W. 275, l. c. 277:

''The evidence in such cases generally consists in showing that an engine passed so recently before the fire as to indicate, and not preclude such origin; that the distance from the passing engine to the starting point of the fire is within the range of live sparks thrown from this or other engines; that the wind and weather conditions are such as to make the starting of the fire from this cause

probable; that the passing engine was in fact throwing live sparks and cinders, or that its laboring upgrade, or speeding up, make such fact fairly inferable; that there was no other cause of the fire as probable as this one— in short, that the origin of the fire from this sourse was both possible and the probable one."

In the instant case, the evidence, with the fair inferences drawn therefrom, is sufficient to submit the question for the determination of the jury.

The defendant insists that the case of Big River Lead Co. v. Railroad, 123 Mo. App. 394, 101 S. W. 636, teaches the doctrine that plaintiff was required to nega- tive the possibility of the fire being started by tramps, etc. What this case really holds is that plaintiff must show that there was no other cause of the fire as probable as that the fire started from the locomotive; that there must be substantial evidence to support the inference that the engine did start the fire.

The second point made is that the measure of damage instruction given for plaintiff is erroneous. It is said that the true measure of damages to growing unmature timber is the difference in value of the land before and after the fire, citing Carroll v. Railroad, 274 S. W. 837. It is true, that case decides that the value of the land before and after destruction of an orchard by fire is the correct measure of damages, but that case involved damages to a producing orchard.

In Shannon v. Railroad, 54 Mo. App. 223, this court held that the measure of damages for the wrongful destruction of fruit trees growing upon the land consisted of the difference between the value of the land on which they grew before and after their destruction. But Judge Bond, for this court, there said:

"The true rule, as deduced from the authorities, is, that in such actions the measure of damages depends upon the relation the trees or shrubs sued for bear to the soil. If their chief value exists when separated from the soil, then their value after removal may be shown as

the measure of damages. If on the other hand their essential value arises from their connection with the soil, then the difference in the value of the land before and after their removal is the measure of recovery of the owner. This is a sound principle supported by safe legal principles, and establishes a method of distinction which can be practically applied. [3 Sedgwick on Damages (8 Ed.), sec. 933.]''

Later on, in Matthews v. Railroad, 142 Mo. 645, l. c. 665, 44 S. W. 802, the Supreme Court, discussing the Shannon case, supra, made this further observation:

''But we think this rule, in order to reach just results, can generally be applied only to cases in which the injury is done to the real estate itself, as distinguished from injury or destruction of what may be erected or grown upon it, as fences, buildings, crops, etc. In such case the corner is entitled to reimbursement for the loss he suffers and it is very manifest that the difference between the value of the real estate before, and its value after, the injury would not generally afford a fair rule for measuring the damages.'' [See also: Miller v. Railroad, 180 Mo. App. 501, 167 S. W. 469; Jones v. Railroad, 189 Mo. App. 6, 176 S. W. 465; Barnes v. Arkansas-Missouri Power Co., 281 S. W. 93.]

In the case at bar, the evidence was as to the damage to trees which were fit for wood, posts and ties, and the value was considered on such basis. Clearly, then, their chief value existed when separated from the soil, and we think the court did not err in giving this instruction. The instruction was given in the following form:

''. . . For the loss of the dewberry crop injured or destroyed by said fire, if so the jury shall find, the jury should determine the reasonable market value of said dewberry crop at the time of the fire, taking into consideration the market value of said dewberry crop at the market season of same, less the expense of the cultivation, harvesting and marketing the crop, the whole not to exceed the sum of one hundred dollars, and that

in determining the amount of damage to the dewberry crop, the jury may take into consideration the probable yield for the season of 1924.

"For the loss or damage to the eight acres of growing timber of plaintiff by said fire, if so the jury shall find, the jury should assess the difference between the reasonable value of such growing timber just before and after the fire, not to exceed the sum of fifty dollars.

"For the wood and fence posts burned and destroyed by said fire, if so the jury shall find, the reasonable market value of such wood and fence posts at the time of the fire, for the wood not to exceed the sum of fifteen dollars and the fence posts not to exceed the sum of two and 50/100 dollars."

It is also said that this instruction is erroneous, in that it required the jury to determine the value of the dewberry crop at the time of the fire, which was on April 23rd, and since it is known that there was no crop of berries at that time of the year, that there was a failure of proof to support this portion of the instruction. The instruction told the jury to consider the market value of the dewberry crop at the time of the fire, "taking into consideration the market value of said dewberry crop at the market season of same, less the expense of the cultivation, harvesting and marketing of the crop, etc." In the very nature of things the instruction could not have been more definite. Some times the exigencies of the case admit some slight element of speculation.

The next point is as to the misreception of evidence. It is said, first, that witnesses were permitted to testify expressly what amount of damage was done to the timber by the fire. There is a serious question, from certain very late decisions of our Supreme Court, whether a question in such form in itself would constitute reversible error, in that same would be considered an invasion of the province of the jury. However, from the record as we read it, what was actually done in this case was that the witnesses

gave their opinion as to the value of the damages after qualifying as to their knowledge of the damages and the market values. Defendant also complains that it was not permitted to show what the plaintiff paid for this land, or, as counsel suggests, "its lack of value." The court excluded this, and we think no error was committed thereby.

Further complaint is made that plaintiff's instruction No. 1 is erroneous. It is said it assumed as a fact that the fire in controversy injured and destroyed plaintiff's property. There was no dispute that there was a fire and that the property was destroyed; this was not a disputed fact. The instruction is a rescript from the instruction approved in Price v. Railroad, 170 S. W. 925, under similar facts and circumstances as this record presents. Moreover, the defendant was given its instruction No. 2, wherein this issue was properly hypothesized. No error lies against the trial court on this point.

Finding no reversible error in the record, the judgment is affirmed. *Becker* and *Nipper, JJ.,* concur.