## KIRK et al. v. LEEMAN.

Nos. 20478, 20479. Opinion Filed April 18, 1933.

Rehearing Denied May 31, 1933.

Malloy, Davis & White and Hadwiger & Hadwiger, for plaintiffs in error.

E. W. Snoddy, for defendant in error.

BUSBY, J. This is an appeal from the judgment of the district court of Woods county. Two cases, Nos. 20478 and 20479, are involved herein. They are both appeals from the same case in the trial court, but herein consolidated in this court. The case-mades are identical. The reason for the two ap-

peals arises out of the following situation: The cause was tried in December of 1928. A motion for new trial was filed and overruled, during the same month and the same term. Thereafter, and in the succeeding term, a petition for new trial on the grounds of newly discovered evidence was filed. A hearing was had on said petition and the court denied the motion for new trial. The appeal in No. 20478 is from the judgment and order overruling motion for new trial on the petition for new trial. The appeal in cause No. 20479 is from the judgment and order overruling motion for new trial signed in December, 1928, and from the subsequent judgments and orders on said petition for a new trial.

The action was commenced on February 1, 1928, in the trial court by the defendant in error. C. W. Leeman, as plaintiff, against the plaintiffs in error Albert E. Kirk and Gladys M. Kirk, partners, operating under the name and style of Alva Hudson Essex Company, as defendants. The parties will hereafter be referred to as they appeared in the trial court.

The petition, after stating that the defendants were copartners, alleges, in substance, that in June, 1927, the plaintiff purchased from the defendant a Hudson sedan automobile, at an agreed purchase price of $1,665, paying $1,000, and delivering to the defendant an automobile at an agreed value of $665; that the said Hudson sedan automobile purchased by the plaintiff was represented to be new and in first class condition, and not to have been used with the exception of having been driven from Hutchinson, Kan., to Alva, Okla.; that the defendants warranted and guaranteed the truth of said statements, and that the plaintiff relied thereon in purchasing the automobile.

Plaintiff further alleged that the statements were untrue; that the car had been used as a demonstrator; that it had not been properly cared for, and that it was defective in many respects. Plaintiff further alleged that upon discovering the defective condition of the automobile, he notified the defendants; that they agreed to adjust the matter, but failed to do so. That, in September, 1928, he tendered back the car upon the condition that they return the car he had traded them and pay him $1,000; that they refused the tender upon the conditions mentioned. Plaintiff prayed for judgment in the sum of $1,665.

Defendants answered by way of general denial. They admitted the sale of the car; alleged that the value placed on the Hudson car for trading purposes was $1,665; that the value placed on the plaintiff's car which was delivered to the defendant was $665, and that the difference was to be paid in monthly payments; that by agreement of the parties a note and mortgage was made out for the monthly payments direct to the Commercial Investment Company, a Colorado corporation. The defendants admitted the car had been used some as a demonstrator, but alleged that the plaintiff at the time of the purchase was fully advised thereof. Defendants further stated that the car was inspected by and tried out by the plaintiff before the purchase thereof; that the car was in truth and in fact in fine condition and devoid of the defects alleged in plaintiff's petition. Defendants further allege that after the plaintiff had driven the car about 6,000 miles, he wrote to the Commercial Investment Company, in September, 1927, and demanded his money back, and refused to make further payments on the note and mortgage; that the car was thereafter repossessed by the Commercial Investment Company.

Plaintiff filed a reply in the nature of a general denial. The case was tried to a jury in December, 1928, and the jury returned a verdict in favor of the plaintiff and against the defendant in the sum of $1,665.

The record is voluminous, containing 500 pages, and the evidence is in sharp conflict. On the whole, the evidence of the respective parties tends to support the respective pleadings.

At the time of the purchase of the Hudson automobile by the plaintiff, a written memorandum or contract was executed. This instrument appears at page 50 of the record and is denominated as "Order for New Motor Vehicle." At the beginning of the instrument appears the following language: "Please enter my order for one new Hudson Standard Sedan." That is signed, "Charles W. Leeman." After the signature appears an acceptance by the Alva Hudson Essex Company, together with the following language:

"The dealers hereby warrant that the above vehicle they are selling is their property; that it is free from liens of any kind, that they have full power to sell and transfer the same, and that they will defend the same against all claims of all persons whatsoever."

The record also discloses that the payment of the $1,000 to the defendants was

in the form of commercial paper secured by mortgage on the Hudson car executed in favor of the Commercial Investment Company and payable monthly. The record discloses that the car was repossessed on October 27, 1927, by being taken surreptitiously from the streets of Alva, where it had been parked by the plaintiff, and that it was so taken without plaintiff's knowledge or consent. It was the contention of the plaintiff that the defendants aided the Commercial Investment Company and actually participated in the repossession of the car. It was the contention of the defendants, however, that the repossessing of the car was done solely by an an agent of the Commercial Investment Company. The evidence was conflicting on this point.

The record shows that on October 27, 1927, plaintiff Leeman had parked his car in front of the Bell Hotel at Alva while he ate his supper. The car disappeared. He notified the sheriff's office that he thought it was stolen. A search was instituted. Later, however, Leeman found the car in the garage of the defendant automobile company with all his personal effects removed therefrom. Possession of the car was denied to him by the agents of the defendants. The record further discloses that a Mr. Frame, manager of the defendant automobile company's business at Hutchinson, Kan., had driven to Alva on October 27, 1927, with a Mr. McMillan, who was attorney and agent for the Commercial Investment Company, which company held the mortgage on the car. The evidence is undisputed that Mr. McMillan proceeded to drive the car from the hotel to the defendants' garage without Leeman's knowledge or consent, and that later on, during the night, Frame and McMillan returned to Hutchinson, Kan. Frame drove back to Hutchinson in the car in which he and McMillan had driven to Alva, and McMillan drove the Hudson sedan in controversy. Leeman never saw the car again. An employee of the defendant company testified that before leaving the garage, Frame, who was defendants' manager, made the remark, "We repossessed the car."

At the time of the purchase of the car in question, Leeman delivered his second-hand car to the defendants and executed a mortgage in the sum of $1,100 to the Commercial Investment Company, which financed all sales made by the defendants herein. Leeman made only two monthly payments on the car before he tendered it back and demanded a rescission of the trade because of alleged defects in the car. The defendant company refused to agree to a rescission of the contract. Defendant company received $1,000 cash from the Commercial Investment Company on the mortgage. The net result was that Leeman parted with a second-hand car and the defendants got the benefit of it. The defendants got $1,000 cash from the finance corporation. The finance corporation got the Hudson sedan. Leeman parted with his own car and two months' payments, amounting to $92 each. It is to be noted, however, that the Commercial Investment Company still holds the note of the plaintiff, Leeman, but, so far as the record shows, the mortgaged Hudson car in question has not been sold as required by the chattel mortgage laws of Oklahoma, and the issues as between Leeman and the Commercial Investment Company have not yet been determined.

The defendants complain of certain instructions given to the jury by the trial court, and particularly instructions Nos. 3 and 4, which are as follows:

3. "A stipulation in a contract that on default in payment of the debt the mortgagee may take possession of and sell the mortgaged property is valid, but such written permission to take possession of the mortgaged property confers no greater right, however, than the mortgagee would have had by operation of law.

"In most states, the rule generally laid down is that the only restrictions upon the mode by which the mortgagee shall secure possession of the mortgaged property after a breach of the condition is that he must act in an orderly manner and without creating a breach of the peace, and must not intimidate by securing the aid of an officer who pretends to act under color of his office. In Oklahoma, however, the courts have gone further and the rule here is that neither the mortgagee, himself, or through his agent, has the lawful right to take possession of the property by stealth. And stealth, as used herein, means to act secretly and without the knowledge or consent of the owner of the car.

"When the mortgagee of the personal property rightfully takes possession of the same because of a breach of a condition of the mortgage, he must advertise and sell the same according to law within a reasonable time thereafter.

"Conversion is any distinct act of dominion or control wrongfully exerted over another's personal property in denial of, or inconsistent with his rights therein.

"Every person is liable in conversion who

---

personally or by an agent commits an act of conversion, or who participates therein by instigating, aiding, or assisting another therein, or who benefits by its proceeds in whole or in part.

"If a person purchases personal property which has been warranted to him, and the warranty has been breached, then such purchaser may rescind the contract, provided he does so promptly, under all of the existing facts and circumstances, upon discovering the facts which entitle him to rescind; and he must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon the condition that such other party shall do likewise, unless such other party is unable or positively refuses to do so. And, ordinarily, such person offering to restore must keep good his tender to the other party of everything of value which he received under the contract. But if the person offering to rescind, by reason of the wrongful conduct of such other person, is rendered incapable of fully restoring such other person to his former position, then to that extent such restoration is not necessary to a rescission of a sale contract. In other words, the person offering to rescind is not bound to restore what he has received where the other person to the contract by his wrongdoing has made it impossible for the one offering to rescind to make a restoration of what he has received under the contract."

While this particular instruction is no model, yet it fairly states the law applicable to this case, and we hold that its application to this particular case is not error. Wilson Motor Co. v. Dunn, 129 Okla. 211, 264 P. 194; Ben Cooper Motor Co. v. Amey, 143 Okla. 75, 287 P. 1017. Instruction No. 4 reads as follows:

"If you believe from the evidence, facts and circumstances, that, in order to induce the said plaintiff to purchase the said automobile, the said defendants, through their agent or agents, represented and stated and warranted to the plaintiff that the said automobile was new, had just been shipped from the factory at Detroit, Mich., to Hutchinson, Kan., and driven by them direct from Hutchinson, Kan., to Alva, Okla.; that said automobile had neither been driven nor used in any way, except said drive from Hutchinson to Alva; that the same was in first class running condition, in the best of order; that the said plaintiff believed the said statements and warranty and relied thereon in the purchase of the said automobile; that the said car did not have proper power; that the brakes were worn and did not work properly; that the pistons were loose and that they slapped; that the bushings on the steering gear were worn; that the connecting rods were loose; that the piston rings were worn; that the timing on the crankshaft was defective; that the main bearings on the engine were worn; that the said car had been driven a few thousand miles before its sale and delivery to the plaintiff, and had been used by the defendants as a demonstration car, or that such warranty of said car was breached; by reason of said car being different in said respects and inferior to the quality the car was represented and warranted to be; that within a reasonable time under all of the facts and circumstances, the said plaintiff acted promptly in tendering and bringing notice to the defendants or either of them, or their managing agent in charge of their business in Alva, Okla., of his tender back of the said Hudson automobile upon condition that the said defendants should return to the plaintiff everything they received from the plaintiff by virtue of the said contract of sale and purchase, and that they refused to make the exchange and return plaintiff's property; that the Commercial Investment Company took possession of the said Hudson automobile under its mortgage by stealth, as stealth is defined in these instructions, and that the said defendants personally, or by their agent or agents, participated in the said taking by instigating, aiding, or assisting therein, and thereby rendered it impossible for the plaintiff to restore to the defendants the said Hudson automobile, that the defendants have sold said Willis St. Claire automobile, then your verdict should be for the plaintiff for the value of what he parted with to the said defendants in the purchase of the said Hudson automobile; otherwise, your verdict should be for the defendants."

These instructions, together with the other instructions given by the court, fairly present the law applicable to this case, and do not constitute reversible error. The evidence was conflicting as to whether or not the defendants through their agent aided and assisted in the taking of the Hudson car from the plaintiff by stealth. This was a question of fact for the jury to determine, and, unless determined clearly against the weight of the evidence, the verdict will not be set aside on appeal.

It will be observed that instruction No. 4 is an affirmative instruction, covering the controverted questions of fact in this case, and requiring a finding of the affirmative existence of the facts necessary for recovery by the plaintiff. Examined as a whole, and considered in the light of the other instructions of the disputed questions of fact existing in this case, the instruction is a reasonably accurate statement of the law and a fair safeguard to the rights of the defendant.

The defendant complained that the court erred in refusing to give two special interrogatories as follows:

"1. Did the Commercial Investment Company repossess itself of the Hudson sedan involved in this suit and by virtue of the mortgage it held upon said automobile?

"2. Did the defendants aid the Commercial Investment Company to repossess the Hudson sedan involved in this suit, under and by virtue of the mortgage the Commercial Investment Company held upon said automobile?"

Article 7, sec. 21, of the Oklahoma Constitution provides:

"In all jury trials, the jury shall return a general verdict, and no law in force, nor any law hereafter enacted, shall require the court to direct the jury to make findings on particular questions of fact; but the court may, in its discretion, direct such special findings."

Construing the above section, this court has heretofore held that it is not error for the trial court not to direct the jury to make special findings. Brownell v. Burke, 97 Okla. 50, 221 P. 1026.

The trial court in its discretion could either submit the special interrogatories requested or could refuse. No error was committed in refusing.

The defendants complained that the court erred in not granting a new trial. The petition for new trial sets out at length what the testimony of McMillan and Frame would be with reference to defendants' part in repossessing the car in the event a new trial was granted. It appears that the defendants knew, or should have known, of this testimony at the time of trial. No showing is made, however, that any steps were made to secure a continuance or delay of the trial on account of the absence of these witnesses, and the court did not err in refusing to grant the new trial. Bank of Chelsea v. School Dist. No. 1, Rogers County, 62 Okla. 185, 162 P. 809.

For the reasons herein stated, the judgment of the trial court is hereby affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur.