### PAULS VALLEY MILLING CO. v. GABBERT.

No. 27915.    April 5, 1938.

Rehearing Denied April 26, 1938.

R. E. Bowling, for plaintiff in error.

Moody & Henderson, for defendant in error.

PHELPS, J. The trial judge, without

a jury, gave plaintiff judgment for damages sustained on account of producing a smaller crop of oats from seed bought from defendant than he would have produced if defendant had delivered him the character or kind of seed oats which he ordered, and the defendant appeals. There was a serious dispute of facts involving several of the essentials to plaintiff's recovery, but we state the facts as favorably to plaintiff as the record will permit.

The plaintiff operated a farm near Pauls Valley, in which city the defendant operated a seed store. Two or three weeks before sowing time the plaintiff visited the defendant's store in Pauls Valley, and there in a small box on the desk of defendant's representative he saw some oats which he, the plaintiff, testified were "Texas red rust proof seed oats." There is no evidence of any express oral or written representation having been made to plaintiff, but, according to his testimony, he ordered 20 bushels of seed oats by that sample, at 80 cents a bushel, to be delivered in two weeks. He paid for them several days before delivery.

In due time defendant's truck driver delivered the oats to plaintiff at a country store near plaintiff's farm, and plaintiff was present at the point of delivery. At that time and place he opened the sacks containing the oats and inspected them. According to his own testimony he knew immediately that they were not the kind of oats he had ordered; nevertheless, he said nothing to the defendant about it, and went ahead and planted them. The following is his testimony on that question:

"They were just little old black slick oats, very common stock. * * * and so when I seen them—opened them, I noticed they were not what I had bought at all, but I went ahead and sowed them."

The plaintiff was an experienced farmer and well knew the difference in oats; he testified that there was "no comparison between the kind of oats" ordered and received. As stated, he made no effort to communicate with the nearby defendant, and there is no evidence indicating that this was anything other than an innocent mistake, assuming in the first place, as we must under the principles of review, that the plaintiff ordered the red rust proof oats. Neither is there any evidence that the red rust proof seed oats were not readily available on the market.

In considering the defendant's contention that the judgment is contrary to the evidence and law, it should be borne in mind that this is not an action to recover the purchase price of the oats, or to recover the difference between that and the value of the oats delivered, but the judgment rendered was for consequential damages later sustained. As nearly as we are able to ascertain, the amount of the judgment was arrived at by subtracting the approximate number of bushels actually harvested from the number of bushels which the evidence showed would have been harvested if red rust proof oats had been planted, and multiplying that difference by the market price per bushel.

Plaintiff seeks to sustain the judgment on the theory of breach of implied warranty. A warranty is an express or implied statement of something undertaken as a part of a contract of sale, but collateral to its express object (Brown v. Davidson, 42 Okla. 598, 142 P. 387), an undertaking that a certain fact regarding the subject of the contract is what it has been represented to be (Commonwealth Cotton Oil Co. v. Lester, 156 Okla. 93, 9 P.2d 738). We need not here discuss the various undertakings usually included in implied warranties, for there is no contention that the seed were defective. The only complaint of plaintiff, and the theory upon which the case was tried, is that the seed were not the kind ordered by him, that is, that he ordered the red rust-proof and he received just ordinary oats. As stated by plaintiff in his brief, "They could not sell a horse and deliver a mule."

On a sale by sample, such as this was, a warranty exists that the goods shall be according to sample. Collins Cotton Co. v. Wooten-Burton Sales Co., 81 Okla. 67, 196 P. 681. And a warranty in the sale of seeds may exist as to the kind of seeds to be delivered, as distinguished from quality, etc., such as delivering cane seed when broom corn seed was ordered. Manglesdorf Seed Co. v. Busby, 118 Okla. 255, 247 P. 410. Or in warranting delivery of standard evergreen broom corn seed and delivering the variety known as dwarf broom corn seed. Manglesdorf Seed Co. v. Pauls Valley Grain & Seed Co., 134 Okla. 210, 273 P. 252, as retried and affirmed in Manglesdorf Seed Co. v. Pauls Valley Grain & Seed Co., 155 Okla. 270, 8 P.2d 1100. And in the Busby Case, supra, we held that such an action as this is ex contractu, and that in the absence of proof that the seeds delivered were "faulty or defective," there is nothing in our Pure Seed Law (chapter 138, S. L. 1919, as amended by S. L. 1929, chapter 230, and,

as it now reads, 2 Okla. St. Ann., sections 771 to 781) which creates any new rule of civil liability for breach of express or implied warranty. In the concluding syllabus in the Busby Case we held that:

"For an innocent mistake in the sale of cane seed for broom corn seed, the rule of liability and the method of proof is the same as for the breach of implied warranty of fitness in the sale of any other personalty."

It therefore appears, so far, that the case may correctly be treated as coming within the principles applicable to sales warranties, and that the evidence was sufficient to sustain the presumed finding that the warranty was made and broken. It remains to be determined whether it follows that defendant, under the admitted facts of the case, is liable to plaintiff in the full amount of the judgment entered.

The question whether inspection, acceptance, and retention of goods waives a warranty, or, as sometimes put, whether the warranty survives acceptance, is one over which there has been much argument, and, at least in states not having the Uniform Sales Act (see section 49 thereof), a question on which there appears to be a great difference of opinion. In some jurisdictions it is held that while retention or acceptance of the goods does not waive an express warranty, it does waive an implied warranty, or waives it in executory contracts or actually discovered defects. The authorities in many states are so greatly at odds that the law approaches that state of flexibility whereunder it is sometimes said that each case depends on its own facts and circumstances. Underneath, however, it may be discovered that the conflict is apparent rather than real, and is caused in many cases by attempting to fit ordinary abstract principles to extraordinary fact situations.

In this state we have announced several times that where there is an implied warranty, acceptance of the goods with knowledge of the defects will not bar an action for damages. Wallace v. L. D. Clark & Son, 74 Okla. 208, 174 P. 557, 21 A. L. R. 361; Lawton Refining Co. v. Hollister, 86 Okla. 13, 205 P. 506; Wood & Co. v. Val Blatz Brewing Co., 112 Okla. 119, 240 P. 115; Northern Implement & Produce Co. v. Turner-Clinton Co., 117 Okla. 136, 245 P. 646; Kirk et al. v. Leeman, 163 Okla. 236, 22 P.2d 382. An examination of all such cases reveals that either:

(a) That which was called damages was merely recoupment of the difference in actual value of the article received and the article contracted for (Kirk v. Leeman, supra), recovery of a part of the purchase price (Northern Implement Case, supra), freight paid by the buyer (Wood & Co. v. Val Blatz etc., supra), none of which were of the present form, consequential damages; or (b) the buyer was not in position to prevent consequential damages, even though he discovered the defect (Wallace v. Clark & Son, supra; Lawton Refining Co. v. Hollister, supra, where the buyer of gasoline could not, or reasonably did not, discover the gasoline's defects until she had sold large quantities thereof to her customers).

So it would seem that in this state the buyer· has not heretofore recovered consequential damages for the breach of an implied warranty, where he discovered the defect and retained possession of the goods, except in those instances wherein he was damaged regardless of retention or acceptance. In other words, using the vernacular, where he was in a tight place. Illustrating, in the Lawton Refining Case, supra, the gasoline had been accepted and distributed, was in the tanks and a large part of it had been resold; in the Wallace Case, supra, involving a large quantity of sardines purchased by a food broker, the broker already had his contracts with his customers, and was under a legal obligation to fulfill them.

At the same time, our decisions have been of sufficient latitude to allow for such a situation as we now have before us. See Dunn v. Vaughan, 120 Okla 240, 251 P. 472. For instance, in the Lawton Refining Company Case, in the supplemental opinion on rehearing (86 Okla. 13, 15, 205 P. 506, 508), we plainly asserted in substance that the doctrine had its limitations, and that we would not feel justified in carrying it so far as to create injustice. There, in the petition for rehearing, the rule had been urged that consequential damages are not recoverable after knowledge of defects, and we said:

"The court has no objection to this rule of damages, and it is, no doubt, good law when applied to a proper state of facts. The rule * * * applies where the defects are discoverable to the senses and upon inspection, and where at the time of the attempted delivery the purchaser has the option of refusing to take the goods. Under such circumstances he cannot recover consequential damages such as a loss of profits if he does accept them, but that is not this case."

But it is the present case. Indeed, a

more fitting situation is scarcely conceivable, and we believe that both in legal theory and by the precepts of common justice the defendant should not be held in damages for the crop which would have been plaintiff's had he but simply spoken. It cannot be said that plaintiff owed no duty at all to the defendant. He could have avoided these damages by disclosing the facts to the seller, a very simple task. It should be borne in mind that this is an action on contract, not tort. Defendant's delivery of the wrong kind of oats, or its misconception of plaintiff's original order; could easily have been an innocent mistake. We do not hold that it is not liable for its innocent mistakes to the extent that those mistakes themselves may prejudice another. But when such a mistake is discovered by the buyer in ample time to avoid injury, and when it is an easy and simple matter for the buyer to so avoid it, and he fails to do so, then he himself is, in effect, voluntarily producing his own injury, and we refuse to inflict the consequences of such conduct upon the defendant. Good conscience will not permit such an unwarranted extension of the doctrine. The limitation suggested in the supplemental opinion in Lawton Refining Co. v. Hollister, supra, as copied above, is consonant with even-handed justice.

The judgment is reversed and the cause is remanded, with directions to enter judgment for the defendant.

BAYLESS, V. C. J., and WELCH, CORN, and HURST, JJ., concur.