**Jim BLACKBURN, Plaintiff-Appellant,**

**v.**

**CARLSON SEED COMPANY, a Missouri corporation, Defendant-Respondent.**

**No. 7754.**

Springfield Court of Appeals.
Missouri.
Feb. 26, 1959.

John D. Kelly, Seneca, for plaintiff-appellant.

Emerson Foulke, Joplin, for defendant-respondent.

RUARK, Judge.

But when the blade was sprung up, and brought forth fruit, then appeared the tares also.

Matthew 13:26

In this case the plaintiff, a farmer, purchased of the defendant, a seed merchant, 35 pounds of "sargo" seed. But as the blades matured the whole crop was revealed to be tares in the form of milo maize.

The plaintiff was not familiar with sargo seed and was innocent in planting the milo which defendant's agent had handed him as and for "sargo." According to the evidence, milo, in plaintiff's vicinity, is grown for its seed grain and must have time to mature. It has little or no value for silage. "Sargo" is grown for forage or silage. The purchase and planting was in July 1953. This was a drought year, silage was a valuable commodity, and plaintiff planted the supposed "sargo" seed for silage. The milo crop did not mature, and, according to plaintiff's evidence, was "practically worthless" and was not harvested. After the mistake was dis-

covered the plaintiff complained, and Carlson was out, with witnesses, on three occasions in the late summer or early fall to observe the crop.

Plaintiff sued defendant for breach of warranty and received a jury award of $800, but on defendant's alternative motion the court set it aside and entered judgment for defendant. Plaintiff has appealed.

■ We think there is little question that plaintiff's evidence was sufficient to sustain a breach of warranty or condition of sale. When one orders from a merchant seed of a certain variety and is, without fault on his part, supplied with seed in response to such order, there is, as a part of such sale, a warranty that the seed is of the variety so bargained for and sold, and the buyer can recover damages for such breach.[1]

In this case the field where the seed was planted consisted of 12 acres, 10 acres of which lay in the *crick* bottom and 2 acres on the hill. The land had been in clover and Korean pasture, which plaintiff had plowed under and seeded to oats. Green bugs got in the oats and because of that the oat crop was likewise plowed under. Plaintiff testified that because of this previous treatment the land did not need fertilizer for the contemplated "sargo" crop. The supposed "sargo" seed was planted as a row crop immediately after purchase. With one acre of (the hill) land yet to go, plaintiff ran short of seed and purchased some more (this time real) "sargo" seed, mixed it with the spurious (milo) seed, and finished out his last acre. An adjoining neighbor, across the road and in the same bottom, planted "sargo" several

days after plaintiff had planted his hoped-for crop. The planting and other conditions of the two crops were approximately similar, and the neighbor matured a "pretty fair" crop of silage "sargo." Pictures of the two crops were introduced in evidence, and tended to verify plaintiff's contention as to a poor, immature milo crop on his land and a "sargo" crop suitable for silage on the other.

Plaintiff testified that under the conditions which existed that crop year he "would naturally expect" from his field a yield (presumably of "sargo") amounting to 10 to 15 tons of silage per acre at a value of $12.50 to $15 per ton. Mr. Radley, an experienced farmer who owned adjoining land on the same bottom and who had raised "sargo," but not for silage, testified that under the conditions existing in the year 1953 the reasonably expected yield of "sargo" silage from plaintiff's field would have been 10 to 12 tons per acre. Plaintiff also testified that the cost of cutting the silage would have been $6 per acre. This was all the evidence as to amount of damage suffered.

Defendant-respondent's contention is that any damage which may result from the loss of an unplanted crop is entirely speculative; and that, in any event, the plaintiff did not provide proof which removed his damage in this case from the realm of speculation and conjecture.

■ Ordinarily the measure of damages for a crop is its value at the time of its loss. But damages based on the loss of an unmatured crop are ascertained by a consideration of the probable value of such crop at time of maturity, minus the cost of cultivation, harvesting, and marketing.[2]

1. Johnson v. Sproull, 50 Mo.App. 121; Cline v. Mock, 150 Mo.App. 431, 131 S.W. 710; see 16 A.L.R. 859, 871, annotation; 32 A.L.R. 1241, annotation; 117 A.L.R. 470, annotation; 168 A.L.R. 581, annotation; Johnson v. Foley Milling & Elevator Co., 147 Minn. 34, 179 N.W. 488, 16 A.L.R. 856; Malone v. Hastings, 5 Cir., 193 F. 1; Pauls Valley Milling

Co. v. Gabbert, 182 Okl. 500, 78 P.2d 685, 117 A.L.R. 466; Henderson v. Berce, 142 Me. 242, 50 A.2d 45, 168 A.L.R. 572; Parrish v. Kotthoff, 128 Or. 529, 274 P. 1108.

2. Beaty v. N. W. Electric Power Co-op., Inc., Mo.App., 296 S.W.2d 921; Moore v. St. Louis Southwestern Ry. Co., Mo.

■ The method of arriving at this probable matured value is a somewhat uncertain subject. The courts have applied to it the rules which apply to proof of lost profits. Purely speculative opinions are not sufficient. There must be supplied sufficient data to enable the trier of the fact to make a rational estimate.[3]

■■ But where it is certain that damage resulted, uncertainty as to amount will not preclude recovery. If the damages are not capable of exact measurement, all that is required is that the evidence, with such certainty as the nature of the case will permit, lay a foundation which will enable the trier of the fact to make a fair and reasonable estimate, and plaintiff will not be denied if (a) he has produced the best evidence available and (b) it is sufficient to afford a reasonable basis for estimating the loss.[4]

In regard to the "best evidence available" concerning the probable value of an unmatured crop, the courts of Missouri have indicated a preference for the generally recognized *method*[5] of referring to the yield and market value of other crops grown in the vicinity under approximately like or similar conditions, when such evidence is available. In Faire v. Burke, 363 Mo. 562, 252 S.W.2d 289, the court arrived at a basis for admeasurement by comparing the yield with other crops grown in the neighborhood.

In Moore v. St. Louis Southwestern Ry. Co., Mo.App., 301 S.W.2d 404, we said:

"There was no testimony offered to show what similar lands, under like conditions in this vicinity, would have produced, but, plaintiff, himself, merely guesses without offering any basis for his estimate * * *. *We think the best evidence to show this would have been to show what other farmers in the community * * * produced on similar land under like circumstances, in 1954."* (Our emphasis.)

In Uhrhan v. Morie, Mo.App., 293 S.W. 483, loc. cit. 484, we said:

"The same authorities hold that in determining the value of such growing crop, in an action for damages for its destruction, evidence may be offered of the yield of the same kind of crop in similar land under similar conditions and the market price obtained for such matured crops sold in the fall following at the nearest available market; * * *."[6]

■ Although it is true that, in ordinary circumstances, the farmer who tills his own soil ought, by actual experience and observation, to be the best judge of what that land will produce, the plaintiff had not grown any previous crops of "sargo" on his farm and there could be no showing of what "sargo" crop this land had pro-

App., 301 S.W.2d 395; Happy v. Kenton, 362 Mo. 1156, 247 S.W.2d 698; Alcorn v. St. Louis & H. R. Co., 219 Mo. App. 657, 284 S.W. 510; Jones v. Chicago, B. & Q. R. Co., 343 Mo. 1104, 125 S.W.2d 5; see 16 A.L.R. 885, annotation.

3. 25 C.J.S. Damages § 41, p. 516; Spruce Co. v. Mays, 333 Mo. 582, 62 S.W.2d 824; Tnemec Co. v. North Kansas City Development Co., Mo., 290 S.W.2d 169; Mitchell v. Southwestern Bell Telephone Co., Mo.App., 298 S.W.2d 520.

4. 15 Am.Jur., Damages, sec. 23, p. 415; 25 C.J.S. Damages § 28, p. 493; City of Kennett v. Katz Const Co., 273 Mo. 279, 202 S.W. 558.

5. 25 C.J.S. Damages § 41, p. 516; Malone v. Hastings, 5 Cir., 193 F. 1, affirmed 5 Cir., 201 F. 1020; Snyder v. Platte Valley Public Power & Irrigation Dist., 140 Neb. 897, 2 N.W.2d 327, 331; Patrick v. City of Bellevue, 164 Neb. 196, 82 N.W.2d 274; see Shannon v. Bridges, 196 Okl. 481, 165 P.2d 976; Brock v. Newmark Grain Co., 64 Cal.App. 577, 222 P. 195.

6. See also Reed v. Cullor, Mo.App., 32 S. W.2d 296; Hunt v. St. Louis, I. M. & S. R. Co., 126 Mo.App. 261, 103 S.W. 133; Pace v. St. Louis Southwestern R. Co., 174 Mo.App. 227, 156 S.W. 746, 749; Jones v. Chicago, B. & Q. R. Co., 343 Mo. 1104, 125 S.W.2d 5.

duced under similar season and conditions; so we conclude that, in this case, plaintiff was obliged to show the yield and market value of other crops of "sargo" grown in the vicinity under similar or approximate conditions as the best available evidence, or to show the absence or impossibility of producing such evidence. We use the word "approximate" because we recognize the impossibility of proving exactly like conditions. The similarity must be only such as will afford the trier a fair foundation for the making of a reasonable estimate on the basis of comparison.

Here plaintiff proved the existence of a fairly good "sargo" crop grown across the road under similar conditions. However, he did not show the yield of such crop, either actual or estimated. He said that he "would have to guess" at the yield of this across-the-road crop and refused to make an estimate.

Since the cost of maturing, harvesting, and marketing of the crop must be considered in determining its probable net value,[7] it was also plaintiff's obligation to show such. From examination of the picture exhibit we might surmise that plaintiff, in an effort to diminish his damage by maturing the milo crop, expended an amount of labor equal to that which would have been expended in maturing a "sargo" crop, but such could be better shown.

Plaintiff testified that the cost of cutting the crop would have been $6 per acre. But where? Loaded at the field? In the silo? Delivered to the nearest market? The cost of marketing and transportation to market is an important item of the farmer's cost in considering the final total value of the crop, but the jury was not given sufficient data by which an intelligent estimate of this cost could have been made.

It is our conclusion that there was substantial evidence to show there was a breach of warranty and that plaintiff suffered substantial damage because of such; and it is our further opinion that such damages are neither so remote nor speculative that they cannot be shown, but that plaintiff did not, at this trial, produce the best available evidence to afford a basis for determination of the amount. Plaintiff should have opportunity to produce this evidence on a retrial of the case.

For the reasons stated we must hold that the court erred in overruling the motion for new trial and in entering final judgment for defendant on the motion. The judgment is reversed and the cause is remanded for a new trial.

STONE, P. J., and McDOWELL, J., concur.

7. Beaty v. N. W. Electric Power Co-op., Inc., Mo.App., 296 S.W.2d 921; Anderson v. St. Louis, I. M. & S. R. Co., 129 Mo.App. 384, 108 S.W. 605; Hunt v. St. Louis, I. M. & S. R. Co., 126 Mo. App. 261, 103 S.W. 133; Shannon v. Bridges, 196 Okl. 481, 165 P.2d 976.