Leo J. DAVIS and Grace G. Davis,
Appellees,

v.

PUMPCO, INC., Appellant.

No. 46174.

Court of Appeals of Oklahoma,
Division No. 2.

Jan. 22, 1974.

Released for Publication by the Court of
Appeals Feb. 14, 1974.

Douglas C. McKeever, McKeever, Glasser, McKeever & Conrad, Enid, for appellants.

James H. Paddleford, Oklahoma City, for appellee.

NEPTUNE, Judge.

Plaintiffs' second amended petition alleges that plaintiffs own a tract of land they are developing for mobile homes. For the purpose of laying across the land a water pipeline about 5,600 feet long, they purchased from defendant supplier the pipe, couplings and other equipment required. When the line was completed in April 1971, tests disclosed numerous leaks. Plaintiffs allege that defendant negligently furnished to plaintiffs glue for sewer line pipe instead of glue for water line pipe and that the glue and couplings were defective causing damages. Plaintiffs had to dig up the line and reconstruct it. They seek damages alleged to be $9,647.77.

Defendant answered by general denial and cross-petitioned against plaintiffs for the value of the goods. Defendant's cross-petition also joined plaintiffs' construction contractor Farrar as a third party defendant, and alleged that any damages plaintiff may have suffered were caused by the contractor. Defendant's cross-petition against Farrar sought indemnity over and against Farrar for any judgment plaintiffs might obtain against defendant.

Jury was waived and trial was to the court. When the evidence was in, the trial court immediately sustained the contractor Farrar's demurrer to the evidence, but took under advisement the issues between plaintiffs and defendant. After considering briefs of the parties, the trial court rendered judgment denying plaintiffs any recovery against defendant and granted judgment for defendant on its cross-petition against plaintiff for $4,622.63, the amount claimed for materials, plus interest, costs and attorney fees of $1,000. Plaintiffs appeal.

Appellants' only contention on appeal is that the judgment is contrary to the evidence.

■ Since this is a case of legal cognizance in which a jury was waived and trial was to the court, the judgment will be given the same effect as the verdict of a properly instructed jury and will not be reversed if there is any evidence reasonably supporting the judgment. Sparks v. Midland Supply Co., Okl., 339 P.2d 1056 (1959).

Appellants rely upon the implied warranty of fitness for a particular purpose, codified as 12A O.S.1971 § 2–315 providing:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is  . . . an implied warranty that the goods shall be fit for such purpose."

It is undisputed that appellants' plans for the project were given to one of appellee's agents who prescribed the equipment needed for the job, wrote up the order, and caused the materials to be delivered to appellants, and that appellants relied upon appellee seller's skill to furnish suitable goods.

Neither is it effectively disputed that the wrong cement was delivered to appellants and that damage resulted. There is no proof that the correct product was delivered—there is only proof that the correct product was indicated on the order sheet. Thus there is no refutation of the abun-

dant proof on the part of appellants that they had received the wrong cement. Appellee's only witness at trial admits that the wrong product may have been delivered, explaining that two pipe cement products of the supplier—one correct and one incorrect for the particular job—were handled, packaged, and labeled similarly, with one being marked "for sewer" pipe to distinguish it from the product used with water pipe.

■ So the essential elements of an action based on breach of warranty, that is (1) the existence of the warranty, (2) that the warranty was broken, and (3) that the breach caused the loss, are shown.

The conflict arises from what the parties perceive to be their respective obligations and rights under the Uniform Commercial Code in the circumstances of this case.

The record shows that appellants' contractor discovered at the outset of its use that the product received was not effectively doing the job. The contractor's employee Ed Moore who had had six or seven years' experience using PVC cement (the correct product) and who was doing the actual construction work testified:

> ". . . [T]hey sent out four cans and a case and I opened a gallon of it up and when the air struck it why it began to clabber and you don't put pipe together with glue like that. . . . We tried some of it . . . [and] it wouldn't stick. . . . I talked to Mr. Glenn about it . . . and I told my employer about what happened."

Mr. Glenn, the project supervisor for appellants testified that Moore told him the dope furnished by appellee "didn't bond" and he "wasn't satisfied using this dope." So Glenn said he made a telephone call to appellee supplier about it, and further testified "they just went back to their tickets to see what they had shipped . . . they assured me it was the right stuff . . . . I went back and told Ed [Moore] that they told me it was all right, that they had sent the right stuff. He

wouldn't agree to it, I told him 'Well I don't know because I ain't got any way of knowing, I've never used it before or been working around any of it.' So we lingered around a while debating on it and I just assumed they were right, so we just went ahead and used it."

Appellee's only witness testified that after the order was placed there was no subsequent contact from appellants until after the leaking line had been replaced.

On the basis of these facts, appellants urge in their second proposition that they notified appellee that the wrong cement had been received (before use was made of it) but relied upon appellee's assurances then given that it was the correct product, and thus the warranty for the particular purpose is applicable.

Appellee on the other hand, to sustain the trial court judgment, contends that appellants did indeed have the obligation to give notice of an ascertainable defect pursuant to 12A O.S.1971 § 2–605 or be precluded from relying on the defect to establish a breach, and since the evidence was in conflict on the issue of notification, the trial court could resolve the conflict in favor of appellee, which it did and reached its judgment accordingly.

The position of appellee is based upon 12A O.S.1971 § 2–607(3)(a) which clearly states that where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach, notify the seller of the breach or be barred from *any* remedy. The necessity of notice definitely exists for the buyer and seller in privity as obtains in the instant case. See Miller, The Code in Products Liability, 21 Oklahoma L.Rev. 411 at page 434. Regarding the time for notice, the author concludes:

> "A consumer whose person or property has been injured . . . is not merely trying to get out of the bargain. . . . [A]nd with damaged property or a wound to evidence that the bargain was truly bad, perhaps notice given after the suit is begun is within a reasonable

time, if indeed the suit itself is not sufficient in this regard."

■ This philosophy relating to notice would of course not be appropriate where the buyer discovers the unfitness before use of the product and goes ahead and uses the goods anyway. Title 12A O.S.1971 § 2–316 provides in part:

". . . [W]hen the buyer . . . has examined the goods . . . there is no implied warranty with regard to *defects* which an examination ought in the circumstances to have revealed to him." (emphasis ours)

The Oklahoma Supreme Court has held that consequential damages may not be recovered for an innocent mistake of the seller where the buyer discovers a defect in ample time and with an easy opportunity to avoid the injury, yet fails to notify the seller. Pauls Valley Milling Co. v. Gabbert, 182 Okl. 500, 78 P.2d 685, 117 A.L.R. 466 (1938). The corollary is that a warranty of fitness should not exist if the buyer examines the goods before making use of them and finds them clearly to be unfit or obviously inappropriate for the particular purpose.

Therefore, we think the critical issue here becomes: Is there in the record evidence from which the trial court could find that the buyer before using the goods examined them and found or should have found them clearly to be unfit or obviously inappropriate for the particular purpose, and if so did he fail to notify the seller, so that the warranty of fitness thereafter ceased to exist?

■ In the instant case, though the product had the physical characteristics of an appropriate one, actual use demonstrated that the cement would not bond the joints. Confirmation by the buyer that the supplier's invoices showed that the correct product had been ordered is not a reasonable basis for continuing to construct with cement that (a) is not satisfactory to the experienced workman making use of it and (b) is not performing the task for which it was purchased. In the circumstances of this case, we think the buyer was charged with knowledge of the unfitness of the goods and unreasonably continued to make use of them. On the basis of the conflicting evidence on the issue of notification, we think that the trial court could justifiably find that the warranty of fitness ceased to exist, and that its judgment is correct.

Affirmed.

BRIGHTMIRE, P. J. and BACON, J., concur.